**UNITED STATES of America**

v.

**Lawrence M. GREEN, Appellant.**

**No. 23156.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 26, 1970.

Decided June 17, 1970.

---

756

Mr. Joseph Paull, Washington, D. C. (appointed by this court), for appellant.

Mr. William S. Block, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Daniel Harris, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and TAMM and MacKINNON, Circuit Judges.

BAZELON, Chief Judge:

Appellant was convicted of rape and sentenced to fifteen years in custody under the Federal Youth Corrections Act.[1] At trial the defense was consent; appellant did not dispute that he had intercourse with the prosecutrix. On this appeal, his principal contentions are that the instructions to the jury on corroboration did not sufficiently focus on consent as the one element of the offense actually in dispute, and were therefore confusing; and that the trial court's evident belief in appellant's guilt was improperly communicated to the jury. We affirm.[2]

1. 18 U.S.C. § 5010(c) (1964).

2. Appellant also argues that the evidence was insufficient as a matter of law to submit the question of nonconsent to the jury; that the indictment, signed by the deputy foreman rather than the foreman of the grand jury, was void on its face; that the giving of a modified *Allen* charge before the jury deadlocked was improperly coercive; and that a mistrial should have been declared when, at the beginning of the trial, the jury was able to observe appellant being brought into the courtroom in custody.

We believe that the complainant's testimony, combined with the tears in her clothing and the evidence (including photographs) that she had been beaten was sufficient to take the case to the jury on the issue of nonconsent. Since no challenge was made to the indictment before trial, *see* Gaither v. United States, 134 U.S.App.D.C. 154, 165 n. 32, 413 F.2d 1061, 1072 n. 32 (1969) and cases cited, and since appellant does not

## I.

The jury was instructed, in substance, that a conviction of rape may not be had upon the uncorroborated testimony of the prosecuting witness. The trial court then went on to list eight factors which, it told the jury, "you may or may not consider" to corroborate the prosecutrix's story.[3] At trial, appellant's counsel objected to the instruction because "in a case where the defense is consent, I don't think the corroboration charge is necessary, and it is only confusing to the jury."[4] On appeal, this contention is refined: appellant argues that although the instruction was proper insofar as it

appear to have been substantially prejudiced by the procedure even if it was erroneous, we do not reach the question of the validity of the indictment. We likewise do not reach appellant's challenge to the use of the *Allen* charge as part of the initial charge to the jury: defense counsel at trial specifically agreed with the trial judge that its use in that way was less coercive than waiting for a jury deadlock. Finally, we cannot find reversible error in the jury's momentary viewing of appellant in custody at the commencement of the trial. *Compare* Whorton v. United States, No. 21,890 (D.C.Cir. January 22, 1969) (unpublished).

3. The jury was told:

The charge of the crime of rape is one which is easily made by a complaining witness and one which is difficult for a defendant to defend against, although, of course, as I have told you, it is not required under our system of jurisprudence that any defendant establish his innocence, but the burden is on the Government to prove every element of its case beyond a reasonable doubt. Because such a charge is so easily made, the law does not permit the establishment of the crime of rape on the basis of the complaining witness standing alone. Corroboration of her testimony is required according to the rule of law prevailing in the District of Columbia. Such corroboration, however, need not be by eye witnesses. Eye witnesses can hardly ever be obtained in regard to such an offense as is charged in this case. Corroborating circumstances may be sufficient corroboration.

In connection with whether or not there is corroboration in this case, the jury may, if it so desires, consider the matters which I will mention immediately hereafter, but the jury is not required to consider any or all of these matters as corroboration.

These matters which you may or may not consider as corroborating the complaining witness['s] testimony are:

1. The length of time between the alleged rape and the time the complaining witness communicated her allegations of rape to a third person.

2. Whether or not and under what circumstances, if any, complaining witness abandoned or left certain clothing in the defendant's apartment.

3. The complaining witness['s] physical condition shortly after the alleged rape.

4. The complaining witness['s] nervous condition shortly after the alleged rape.

5. The condition of the complaining witness['s] clothing shortly after the alleged rape.

6. The testimony of Dr. Bergman as to the cervical and urethral smears from the complaining witness taken shortly after the alleged rape show intact sperm.

7. The testimony of Special Agent Wright as to the finding of male sperm on the culuttes worn by the complaining witness at or about the time of the alleged rape.

8. The testimony of Dr. Bergman as to the bruises on the complaining witness['s] face after the alleged rape, and his opinion with reasonable medical certainty as to the number of blows required to produce those bruises.

As to the third element, identification of the defendant, in this case there is no question raised about identification. If it were, of course, corroboration of that would also have to be made.

4. [Defense Counsel]: Your Honor, I would like to put on the record what I think I said in chambers when we discussed the charge on Friday, which is in a case where the defense is consent, I don't think the corroboration charge is necessary, and it is only confusing to the jury. I think they have to believe from the charge, if they found these factors that you outline, that these were rape, that these amount to rape.

THE COURT: There has got to be corroboration—forceful—that is what the corroboration is needed for, not just for the act of sexual intercourse, but for the force and against her will.

required the jury to find corroboration of the prosecutrix's testimony that she did not consent to intercourse, it was improper and confusing insofar as it required corroboration of the admitted fact of sexual relations. In addition, the list in the instruction of those factors which the jury might consider as corroborating the prosecutrix's testimony is attacked as a one-sided summary of the evidence.

Recent cases in this court have emphasized the need, in cases involving rape and similar sexual offenses, not only that corroboration of the complaining witness's testimony exist for every element of the offense,[5] but also that the jury be clearly told that "it is their responsibility as jurors to determine whether evidence which they credit establishes such corroboration."[6] The trial judge was plainly correct in concluding that an instruction was required with respect to corroboration of the prosecutrix's testimony that she did not consent to the intercourse.[7] We need not decide, on the present record, whether it would have been error to refuse to give a charge more narrowly worded to

focus upon the necessity for corroboration of the sole contested issue, consent. The only objection at trial was to the giving of any instruction on corroboration whatsoever. The instruction actually given, we believe, apprised the jury of the need for them to find corroboration of the prosecutrix's claim of nonconsent.[8] That they might have been improved is not, we believe, sufficient reason for us to reverse when the suggestion for improvement was not made at trial.[9]

Nor do we believe that the instruction on corroboration amounted to a one-sided summary of the evidence. Of course it would be improper, in the course of an instruction on credibility, to advert only to matters in evidence supporting the credibility of a witness while ignoring such evidence as might point the other way.[10] But although the requirement of corroboration derives from distrust of accusations of sexual misconduct,[11] corroboration and credibility are distinct.[12] That there may be evidence contradicting the prosecutrix's story is relevant to the latter issue but not to the former.[13] Accordingly, we do

5. *E. g.,* Coltrane v. United States, 135 U.S.App.D.C. 295, 299–301, 418 F.2d 1131, 1135–1137 (1969), and cases cited.

6. United States v. Bryant, 137 U.S.App. D.C. 124, 128, 420 F.2d 1327, 1331 (1969).

7. Borum v. United States, 133 U.S.App. D.C. 147, 152, 409 F.2d 433, 438 (1967), cert. denied, 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969).

8. It is true that the jury were never explicitly instructed that corroboration must be found for every element of the offense charged. However, we believe that such a statement was implicit in the last paragraph of the charge quoted in note 3, *supra,* in which the jury were told that, if identification was at issue "of course, corroboration of that would also have to be made."

9. Appellant's proposed instruction #3, which was denied by the trial court, related not to the question of corroboration but rather to that of the prosecutrix's credibility.

10. *See* Starr v. United States, 153 U.S. 614, 626, 14 S.Ct. 919, 38 L.Ed. 841 (1894); Stoneking v. United States, 232 F.2d 385, 389 (8th Cir.), cert. denied, 352 U.S. 835, 77 S.Ct. 54, 1 L.Ed.2d 54 (1956).

11. United States v. Terry, 137 U.S.App. D.C. 267, 270, 422 F.2d 704, 707 (1970); Coltrane v. United States, *supra* note 5, 135 U.S.App.D.C. at 298, 418 F.2d 1134–1136.

12. *Compare* Farrar v. United States, 107 U.S.App.D.C. 204, 275 F.2d 868 (1959) (sufficient corroboration; no credibility) *with* Allison v. United States, 133 U.S. App.D.C. 159, 409 F.2d 445 (1969) (insufficient corroboration; testimony credible).

13. Of course, if the matters which the jury could find to be sufficient corroboration are themselves in dispute, the instruction should not present only one side of the disputed evidence.

not think it was error to list, in an instruction on corroboration, only those matters in evidence that could have been used to corroborate the prosecutrix's story.

## II.

Appellant's final argument is that the trial court's participation in the proceedings was such as to indicate wrongfully to the jury his belief in appellant's guilt. Our examination of the entire record has convinced us that many of the instances relied upon by appellant to support his claim show nothing more than that the trial court ran a taut courtroom.[14] Nevertheless, several matters require further elucidation.

### A.

The court took a particularly active part in the examination of three witnesses. Much of the direct examination of the medical examiner was in fact carried out by the court. When appellant called a witness to testify to prosecutrix's bad reputation for chastity, and, specifically, to a conversation three years previously in which she had indicated a willingness to have intercourse with appellant, the court interrupted direct examination to elicit the names and ages of those persons with whom the witness had discussed the prosecutrix's reputation.[15] When the prosecutor had finished his cross-examination, the court examined the witness again to emphasize those factors which, it believed,[16]

14. Such instances were not all on one side. The court would occasionally rephrase questions asked by defense counsel as well as by the prosecutor. It twice rebuked the prosecutor, once when he interrupted defense counsel's objection and a second time when his questions on cross-examination became argumentative. In neither case had objection been made by defense counsel.

15. Q [by defense counsel]: And do you know other people who knew [the complainant]?
 A: Yes, I do.
 Q: And have you heard these people discuss her reputation for chastity and good moral character?
 A: Many, many times.
 Q: What is that reputation?
 THE COURT: First, let us find out how many people you know, who those people are, and what was your occasion for discussing [the complainant's] chastity with them.
 THE WITNESS: Well, it wasn't—It was like just talking back and forth, you know, real quick. It was no immediate conversation all through. It was just you'd hear a sentence here and a sentence there from everyone.
 THE COURT: Wait a minute.
 Who is everyone? Suppose you name a few of these people.
 * * * * *
 THE COURT: So you have discussed her chastity with five or six boys? [The witness had named six individuals between eighteen and twenty-two years old.]

THE WITNESS: Yes, sir.
THE COURT: That's all?
THE WITNESS: At least.
THE COURT: At least?
THE WITNESS: Yes, sir.
THE COURT: All right. You discussed the reputation with these young boys; is that right?
THE WITNESS: Yes, sir.

16. [At the bench, prior to the witness's appearance on the stand]
 THE COURT: To me it is almost incredible that somebody—this girl was fourteen, this witness was what, eighteen. In the first place, what was he doing running around with a fourteen-year-old girl?
 [Defense counsel]: He is twenty now, so he would have been seventeen.
 THE COURT: Seventeen, running around with a fourteen-year-old. This impresses him so much that he remembers it to the present time?
 [Defense counsel]: The fact that she brought the charge of rape—
 THE COURT: That wouldn't make you remember it.
 [Defense counsel]: It might make you recall it if you remembered it already.
 THE COURT: All right.
 I should think on cross examination you would be able to handle it.
 [Prosecutor]: I think so, Your Honor.
 * * * * *
 [At the bench, following direct examination]
 [Prosecutor]: Of course, we are hearing all the reputation of [the complainant]. This young man I am sure

rendered the witness's testimony unreliable. Finally, the defense called a staff attorney for the Legal Aid Agency to testify with regard to an interview with the defendant that he had taken at the time of the preliminary hearing. After cross-examination by the prosecution, the court examined the witness to bring out inconsistencies between appellant's earlier story and his present one.

 We have previously had occasion to note that, although a federal judge in a criminal case has the power to participate in the examination of witnesses when it is necessary to "[make] the case clear to the jurors,"[17] this power should be sparingly exercised.[18] Particularly when the questioning is designed to elicit answers favorable to the prosecution, "it is far better for the trial judge to err on the side of [a]bstention from intervention in the case."[19] If more than one or two questions are involved, the proper procedure is "to call both counsel to the bench, or in chambers and suggest what [the judge] wants done. That the judge may be able to examine witnesses more skillfully or develop a point in less time than counsel requires does not ordinarily justify such participation. That is not his function."[20] As Judge Learned Hand once said, "Prosecution and judgment are two quite separate functions in the administration of justice; they must not merge."[21]

 Nevertheless, we cannot find reversible error on the present record. Admittedly this is not a case in which the judge's questioning was directed solely "toward much needed clarification rather than challenges of the testimony."[22] But the boundaries of proper judicial interrogation may be less clearly visible while the questioning is in progress than in the brilliant glare of hindsight. We have emphasized in the past the responsibility of trial counsel to make objection, out of the hearing of the jury, if it appears to him that the trial judge's participation may endanger his client's rights.[23] In the present case, any prejudicial effect from the trial court's participation would have come not from any single question, but from continued participation apparently on the side of the prosecution. Accordingly, there was ample time to object before serious harm was done. With no objection made at trial, the present record does not warrant reversal.

### B.

 In his motion for a new trial, and again in this court, appellant suggests that certain of the trial court's remarks during bench conferences may have come to the attention of the jury. We may assume that these remarks,

knows some reputation of [the defendant].

THE COURT: Well, ask him. Hasn't he discussed other girls, what their reputations were? Wasn't it customary for these kids to get together and tear down people's reputations?

17. Griffin v. United States, 83 U.S.App. D.C. 20, 21, 164 F.2d 903, 904, cert. denied, 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed. 1137 (1948).

18. United States v. Barbour, 137 U.S.App. D.C. 116, 420 F.2d 1319 (1969); Blunt v. United States, 100 U.S.App.D.C. 266, 273–277, 244 F.2d 355, 362–366 (1957);

Billeci v. United States, 87 U.S.App.D.C. 274, 283, 184 F.2d 394, 403 (1950).

19. Blumberg v. United States, 222 F.2d 496, 501 (5th Cir. 1955), quoted in Blunt v. United States, *supra* note 18.

20. Jackson v. United States, 117 U.S.App. D.C. 325, 326, 329 F.2d 893, 894 (1964).

21. United States v. Marzano, 149 F.2d 923 (2d Cir. 1945).

22. United States v. Barbour, *supra* note 18, 137 U.S.App.D.C. at 119, 420 F.2d at 1322.

23. *Id.* at 120, 420 F.2d at 1323; Billeci v. United States, 81 U.S.App.D.C. 274, 281–283, 184 F.2d 394, 401–403 (1950).

some of which are set forth in the margin,[24] would have operated to appellant's prejudice had they been overheard. It appears, however, that no suggestion was ever made to the trial court that these comments might have come to the attention of the jury until the verdict had been returned. We recognize that counsel may be placed in an unenviable position if he must suggest to a trial judge the unwisdom of the latter's conduct.[25] But if an appeal is to be grounded upon the demeanor, tone, or vocal volume of the trial court, those grounds must be made to appear on the record. In the present case, had the matter been brought to the attention of the trial court prior to verdict an inquiry could have been conducted to determine whether the jury heard the remarks at issue.[26] As it is, nothing in the record indicates that the bench conferences were heard by anyone other than the participants and the court reporter; accordingly, there is nothing on which a finding of prejudice could be based.

Affirmed.

24. THE COURT: * * * Actually, this character stuff, I think, is a lot of nonsense in this case. What do you [the prosecutor] want to bring in any rebuttal for? If anybody paid any attention to these kids and their testimony, I would be surprised. * * *

[Prosecutor]: Well, I certainly respect your opinion very, very much.

THE COURT: Well, I have been wrong, too.

[Prosecutor]: I just don't know what to do with it. I firmly believe, Your Honor, that there is a denial—

THE COURT: You have inconsistency after inconsistency with this man's testimony, and what he told the Legal Aid people. You have this woman beaten brutally with a doctor saying she was hit more than once. You have her clothes torn off. What in the world—

[Prosecutor]: Yes, Sir, I agree with you. * * *

See also note 16 supra.

25. If feasible, it is better practice to make such suggestions out of the hearing of the jury. And of course, although counsel should at all times be respectful, he should not allow undue deference to the trial court to interfere with accurate representation of the challenged conduct on the record. See Vinci v. United States, 81 U.S.App.D.C. 386, 387–388, 159 F.2d 777, 778–779 (1947).

26. In Young v. United States, 120 U.S. App.D.C. 312, 346 F.2d 793 (1965), we found reversible error in the trial court's failure to hold a hearing to determine whether certain remarks during the course of a bench conference were heard by the jury once counsel had informed the court that "a number of bystanders" had overheard the remarks.