**UNITED STATES of America**

v.

**Horace L. WYATT, Appellant.**

**No. 24106.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1970.

Decided March 2, 1971.

Mr. Milton I. Baldinger, Washington, D. C. (appointed by this Court) for appellant.

Mr. John R. Dugan, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and David T. Austern, Asst. U. S. Attys., were on the brief, for appellee.

Before WRIGHT and ROBINSON, Circuit Judges, and GORDON,* District Judge, U.S. District Court for the Eastern District of Wisconsin.

MYRON L. GORDON, District Judge:

After a jury trial, the appellant was convicted in the district court of robbery and assault with a dangerous weapon. His appeal raises certain issues which, in our opinion, require a new trial.

On August 17, 1968, the manager of a Washington movie theater was forced by two armed men to open the safe in his office and to turn over the cash inside. His wallet was also taken. On September 7, 1968, the victim saw the appellant at another theater and notified the police that he was one of the two men who had assaulted and robbed him on August 17th. The police arrived and took the appellant into custody.

The appellant's principal defenses were alibi and mistaken identity. During the course of the trial, the judge extensively interrogated both the appellant and his alibi witness and this, the appellant contends, led the jury to believe that the judge doubted the appellant's veracity. Such questioning, he argues, went beyond the limits of proper judicial participation in the trial.

"In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). There is little doubt that he may, when appropriate, question a witness "in aid of truth and in furtherance of justice." Gomila v. United States, 146 F.2d 372, 374 (5th Cir. 1944). See United States v. Hill, 332 F.2d 105 (7th Cir. 1964), and Griffin v. United States, 83 U.S. App.D.C. 20, 164 F.2d 903 (1947), cert. denied, 333 U.S. 857, 68 S.Ct. 727, 92 L. Ed. 1137 (1948).

On the other hand, the trial judge should maintain an aura of impartiality

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

so as not to give the jury the impression that he believes the defendant is guilty. This is especially critical in a case like the one at bar where the evidence arrayed against the appellant was not overwhelming and where the credibility of the appellant was a particularly important factor in establishing the validity of his defenses. See United States v. Levi, 177 F.2d 827, 830 (7th Cir. 1949).

The appellant argues that the sheer number of the judge's questions established his apparent disbelief in the accused's defense. We would reject any strictly quantitative approach in determining whether the judge's participation in the questioning was improper. However, many of the questions asked by the trial judge in the present action opened new areas of inquiry or gave an undue eminence to matters otherwise irrelevant to the offenses with which the appellant was charged.

For example, no reference had been made up to the point in the trial where the judge questioned Mr. Wyatt about his interview with the bail agency; the following answers elicited by the judge during the direct examination suggested that there had been a lack of candor on the part of the appellant:

"THE COURT: Did you tell the Bail Agency when they interviewed you that you were unemployed?

"THE WITNESS: Sir?

"THE COURT: Did you tell the Bail Agency when they interviewed you that you were unemployed?

"THE WITNESS: Part-time work.

"THE COURT: Did you tell them you were unemployed?

"THE WITNESS: No sir."

Other questions resulted in testimony from which the jury could have inferred that the bail agency had some difficulty in getting the appellant's correct home address.

We believe that the foregoing inquiry into a matter which had no apparent relation to the appellant's guilt or innocence may have damaged the appellant's credibility in the eyes of the jury.

Later on, the appellant testified that his mother had told him that she had gotten "a phone call from a show, the manager called with a job." This, he said, accounted for his presence in the Playhouse Theatre on the day of his arrest. Nothing, however, had been said regarding the exact identity of the caller or the place to which the appellant was to report for the alleged job. The judge then questioned the appellant as follows:

"THE COURT: Who called her?

"THE WITNESS: I don't know. And I went past that show and asked for the manager.

"THE COURT: Did your mother tell you that she got a call from the manager of the Playhouse Theatre telling her there was a job open?

"THE WITNESS: She said a man called from a show.

"THE COURT: A man called your mother from the Playhouse Theatre?

"THE WITNESS: About a job. And I went downtown.

"THE COURT: Do you know why your mother should have been called?

"THE WITNESS: Some man called her and she told me about it and I was looking for a part-time job because this University Club, you see, I didn't have a regular job there. The boys come in and quit and I was taking their place."

On redirect examination, the judge asked:

"THE COURT: Where did she say the job was offered?

"THE WITNESS: She said she had the number but she said somewhere downtown.

"THE COURT: How did you happen to go to the Playhouse?

"THE WITNESS: I figured the first show I get to I would ask the man.

"THE COURT: Why did you pick out the Playhouse? There are a number of theatres downtown.

"THE WITNESS: I went to the nearest one because she said it ain't too far from the house.

"THE COURT: Too far from what house?

"THE WITNESS: I live on P Street and she said downtown. And the first show I got to I went in and asked the guy and he said the manager wasn't in and I was going downtown a little further."

These questions and the answers they provoked went beyond mere clarification; they examined a topic which had not been explored by counsel. What was true in United States v. Hill, 332 F.2d 105, 106 (7th Cir. 1964), is true here:

"The government was represented by able trial counsel and there was no apparent reason why that counsel needed any help on the cross-examination of the defendant or defendant's witnesses."

The government points out that the defendant's counsel did not formally object to the judge's extensive questioning of the witnesses; it is quite difficult for counsel to object to the court's questions. United States v. Hill, supra; Adler v. United States, 182 F. 464, 472 (5th Cir. 1910). The absence of an express objection does not remove the error which we find occurred in these proceedings. We believe that the court's questions may have given the jury the impression that the judge doubted the defendant's credibility. See United States v. Carmel, 267 F.2d 345 (7th Cir. 1959), and Williams v. United States, 93 F.2d 685 (9th Cir. 1937).

■ We realize that in this trial there were many instances when the defendant's answers were less than direct, and it was appropriate for the court to lend assistance to avoid confusion on the part of the jurors. Nonetheless, under all the circumstances of this case, we conclude that the court's extensive examination of the appellant and his alibi witness constituted error. When considered together with the court's incorrect instruction regarding the "loaded" gun, hereinafter discussed, we find the error to be reversible.

The appellant also complains of the following statement made by the judge in his instructions to the jury: "This count is assault with a dangerous weapon, and a loaded pistol is a dangerous weapon." It is clear that there was no evidence whatsoever that the gun used in the commission of the crime was loaded.

■ The court's statement was likely to mislead the jury. It was surely erroneous and probably prejudicial. See Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). In Blunt v. United States, 100 U.S.App. D.C. 266, 276, 244 F.2d 355, 365 (1957), the court stated:

"When it is the judge who undertakes to supplement the evidence, the harm is even greater than when the prosecutor does it, for 'the influence of the trial judge on the jury is necessarily and properly of great weight, and * * * his lightest word or intimation is received with deference, and may prove controlling.' Starr v. United States, [153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841 (1894)]. Such conduct by the judge is a fatal 'cut into the presumption of innocence to which defendants are entitled.' United States v. Brandt, [196 F.2d 653, 656 (2d Cir. 1952)]."

In light of what we have already said about the judge's questioning of the appellant and his alibi witness in the present action, it is not necessary to determine whether the reference to a "loaded pistol", standing alone, would warrant reversal. However, we are convinced that the combined effect of the erroneous instruction and the improper interrogation conducted by the trial court requires a reversal of the appellant's conviction.

We conclude that the conviction must be reversed and the case remanded for a new trial.

Reversed and remanded.