UNITED STATES of America

v.

Eugene P. PATTERSON, Appellant.

No. 80–2117.

United States Court of Appeals,
District of Columbia Circuit.

Submitted without Oral Argument.

Decided May 21, 1981.

Eugene P. Patterson was on the brief pro se.

Charles F. C. Ruff, U. S. Atty., John A. Terry, John R. Fisher and Diane G. Clarke, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before WILKEY and MIKVA, Circuit Judges and GORDON *, Senior District Judge for the United States District Court for the Western District of Kentucky.

Opinion for the Court filed by Senior District Judge JAMES F. GORDON.

Opinion filed by Circuit Judge MIKVA, concurring in the result.

JAMES F. GORDON, Senior District Judge:

This matter reaches us as a result of a denial without hearing of appellant's motion to vacate judgment.[1]

Certain facts, by way of background, are required in order to place appellant's complaints on this appeal in a proper judicial perspective.

On January 18, 1977, appellant Patterson was indicted and charged with violations of the Hobbs Act, 18 U.S.C. § 1951, and armed robbery, 22 D.C.Code §§ 2901, 3202. On February 7, 1977, a trial date of March 28, 1977, was assigned. Eleven days before trial date, the trial Court received a letter from Patterson requesting substitution of counsel but asserting his right to a speedy trial. The following day defense counsel moved to withdraw. On March 23, 1977, five days before trial date, the Honorable George L. Hart, Jr.,[2] considered trial counsel's motion to withdraw together with Patterson's *pro se* motion to dismiss his trial counsel, and agreed to and did appoint substitute counsel, entering an order postponing the trial to May 16, 1977.

The trial commenced as scheduled, and, at its conclusion, the appellant was convicted and sentenced.

Subsequently, a timely notice of appeal was filed and counsel for appeal purposes was appointed. Shortly thereafter, appeal counsel moved to withdraw with the assertion that he was unable to find any nonfrivolous grounds for the appeal. On January 25, 1978, our Court sustained said counsel's motion and dismissed Patterson's appeal of his felony convictions, there appearing no meritorious issues to be reached on appeal.

■ Then came Patterson with the usual motion to vacate, asserting complaints of ineffective assistance of counsel, judicially compelled waiver of his speedy trial rights and judicial misconduct during his trial. The motion to vacate was overruled by the District Judge without hearing and leave denied for appeal *in forma pauperis.* Thereafter, appellant paid the fees and this appeal followed.

Recognizing that a motion to vacate may be properly denied without hearing under Rule 4(b) if:

. . . it plainly appears from the face of the motion . . . and exhibits and the prior proceedings . . . that the movant is not entitled to relief . . ., the judge shall make an order for its summary dismissal . . .,

we find the first two asserted grounds for relief to be totally without merit. They are rendered baseless and incredible by an examination of appellant's motion and the original trial transcript and in no way could they be verified on hearing. *Blackledge v. Allison,* 431 U.S. 63, 76, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977).

■ The *motion's conclusory allegations* against trial counsel show upon their face complaints directed toward counsel's methods of trial preparation and the results achieved, rather than the quality of his

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Pursuant to 28 U.S.C. § 2255.

2. Also the presiding Judge who denied the motion to vacate from which this appeal arises.

assistance. Examination of the transcript reflects no support of any claim of service "measurably below the performance ordinarily expected of fallible lawyers," which is the test in this Circuit. No counsel, however skillful, could have "affected the outcome" of this case where appellant's identity was fixed by three eyewitnesses to the commission of the offense and no greater number of unidentified alibi witnesses, more than the three presented, would have prevented the inescapable jury finding of guilt. *United States v. Wood*, 202 U.S.App. D.C. 267, 628 F.2d 554, 559 (1980) (*en banc*); *United States v. DeCoster*, 199 U.S.App. D.C. 359, 624 F.2d 196, 208 and 214 (1979) (*en banc*).

As to appellant's "hindsight" complaint of judicial compulsion of waiver of speedy trial right, the record attests to its total falsity,[3] and the assertion is an obvious abuse of our system of justice. Appellant's complaint would now be based on inadequate time for new trial counsel to prepare had the Court not continued the trial date. Appellant is not entitled to have it both ways.

Complaint is also made that during the felony trial, Judge Hart questioned defendant's alibi witnesses and the defendant himself.

■ Important bench marks must be kept in mind as we examine a trial judge's activity in this regard. A trial judge historically is not just an impartial umpire. *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933). He carries the affirmative duty to make inquiry to restore order out of confusion in the interest of justice to all parties to the proceeding. It is critical to the inquiry to remember that his actions must always be viewed prospectively. *United States v. Liddy*, 166 U.S.App.D.C. 95, 509 F.2d 428, 440 (1974) (*en banc*), cert. den., 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 842 (1975).

■ Naked extrapolation of the trial court's questions here, lifted out of context, might support an inference of projection to the jury of an inquisitorial attitude or a manifestation of Judge Hart's ·disbelief of the alibi witnesses or his disbelief of defendant's testimony. However, when we analyze the questions prospectively in the context of the trial transcript it becomes clearly apparent that no judicial impropriety occurred.

■ The alibi witnesses, though all purportedly testifying as to a *common period in time* and as to the *activities of each other* with the defendant at those common periods in time, proffered a jumble of contradictions and confused assertions. Such properly triggered the trial Judge to his obligation to attempt, by his questions, to clarify. The fact that such questions of clarification, in some instances, may be viewed as having resulted in adversely affecting the alibi witnesses' credibility does not make the act of questioning itself improper. *Jackson v. United States*, 117 U.S. App.D.C. 325, 329 F.2d 893, 894 (1964). Quite to the contrary. The reverse result *could have* manifested itself and strengthened the credibility of those witnesses. This is why "prospective" analysis is critical.

Before the answers were given by the witnesses, Judge Hart had no way of knowing what the answers would be, but he did have the duty to obtain the answers in the interest of justice. To those who might be heard to argue that the trial Court should have deduced in advance that the answers

---

**3.** DEFENDANT PATTERSON: Your Honor, *I will waive my rights, I will waive my rights of the speedy trial.* I want, I would like to have a new lawyer, please.

    THE COURT: You understand this: The next date that is available for me to try this case is May 16th. *If I appoint a new lawyer for you,* this case will not be tried before May 16th.

    DEFENDANT PATTERSON: *That's allright with me,* Your Honor.

    THE COURT: All right. You waive your right to trial prior to May 16th.

    DEFENDANT PATTERSON: To have a new lawyer.

    THE COURT: Yes.

    DEFENDANT PATTERSON: *Thank you, Your Honor.* (Emphasis supplied). (TR II 73–74).

    Gratitude which, for purposes of present convenience, now becomes ingratitude.

to be forthcoming would undercut the credibility of the alibi witness, we would respond, if that be so, then the pollution by perjury is and should be properly thwarted by the trial judge. See *United States v. Liddy, supra,* 509 F.2d at 440.

The trial Judge likewise questioned the defendant-appellant Patterson specifically as to whether he had reported or paid income tax on certain gambling winnings about which he had testified in explanation of his possession of certain funds. Standing alone this would seem to be a suggestion by the trial Judge of defendant's possible commission of another offense. However, when analyzed prospectively against the record, it can be seen that had the defendant been able to have answered "yes," rather than "no," such would have strengthened his defense. Again, the Court had no way of anticipating the answer, but if a possible beneficial answer lurked undisclosed it was the duty of the Court in defendant's interest to bring it forward for the jury's consideration. We find that the circumstances which gave rise to the questions support the propriety of the intervention. *United States v. Wyatt,* 143 U.S.App.D.C. 136, 442 F.2d 858, 861 (1971).

In any event, when the Court's entire activity is examined, it becomes apparent that, on the worst interpretation, such conduct failed to reach unconstitutional dimensions. Insubstantial claims of this nature are not cognizable under 28 U.S.C. § 2255. *Buckelew v. United States,* 575 F.2d 515, 518 (5th Cir. 1978). Finally, in this respect, we note that the trial Judge affirmatively and adequately admonished the jury not to consider his actions as any indication of his feeling as to the defendant's guilt or innocence.

When these occurrences are reviewed in the light of our previous holding in *United States v. McCord,* 166 U.S.App.D.C. 1, 509 F.2d 334, 348 (1974) (*en banc*), *cert. den.,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975), it is clearly established that the trial Judge's intervention met the test of being "in pursuit of justice" and "consistent with the premises of the limits on intervention."

Accordingly, we affirm the trial Court's dismissal, without hearing, of appellant's motion to vacate.

MIKVA, Circuit Judge, concurring in the result:

Although I agree that appellant has raised no issues meriting relief, I cannot agree that the trial judge was carrying out an affirmative *duty* in his active examination of appellant and his alibi witnesses.

This court has repeatedly admonished district courts that their power to participate in the examination of witnesses should be exercised with caution and that any error should be on the side of abstention. *See, e. g., United States v. Green,* 429 F.2d 754, 760 (D.C.Cir.1970); *United States v. Barbour,* 420 F.2d 1319, 1321–22 (D.C.Cir.1969).[1] We have been more receptive to a trial judge's intervention when it is aimed at providing needed clarification, rather than at challenging testimony or initiating new lines of questioning. *See United States v. Wyatt,* 442 F.2d 858, 860–61 (D.C.Cir.1971); *Barbour,* 420 F.2d at 1322; *cf. Green,* 429 F.2d at 760. Contrary to the majority's suggestion, this was not a case in which the judge's participation was necessary to alleviate confusion. Moreover, the government had able

---

1. The court explained the relevant considerations quite clearly in *Green*:

[A]lthough a federal judge in a criminal case has the power to participate in the examination of witnesses when it is necessary to "[make] the case clear to the jurors," this power should be sparingly exercised. Particularly when the questioning is designed to elicit answers favorable to the prosecution, "it is far better for the trial judge to err on the side of [a]bstention from intervention in the case." If more than one or two questions are involved, the proper procedure is "to call both counsel to the bench, or in chambers and suggest what [the judge] wants done. That the judge may be able to examine witnesses more skillfully or develop a point in less time than counsel requires does not ordinarily justify such participation. That is not his function." As Judge Learned Hand once said, "Prosecution and judgment are two quite separate functions in the administration of justice; they must not merge."
429 F.2d at 760 (footnotes omitted).

counsel and hardly needed help from the bench.

Appellant's three alibi witnesses—his mother and two sisters—testified during direct and cross-examination regarding appellant's activities during the day of the robbery. But the judge's questions focused on appellant's previous and subsequent visits to his family and the events on those days. *See* Trial Transcript (Tr.) at 170–74, 202–03, 223–25. This was not an attempt to elucidate, but an effort to impeach credibility.[2] If the judge thought that this area of inquiry was a promising one, he should have called both attorneys to the bench or to chambers and made the suggestion. *See Green,* 429 F.2d at 760 ("the proper procedure" when more than one or two questions are involved); *Barbour,* 420 F.2d at 1322 & n.25. Similarly, the judge's examination of appellant regarding his failure to file a tax return for his gambling winnings opened a new line of questioning rather than clarified previous ones. *See* Tr. at 271–72. Although the judge may not have anticipated appellant's response to all his questions, he should have been aware of the possibility that appellant would answer that he had neglected to file a tax return. The judge should have been sensitive to the potential prejudice of such a response; he should have considered the possibility that a judge's eliciting such an answer from appellant might well give "undue eminence to matters otherwise irrelevant to the offenses with which the appellant was charged." *Wyatt,* 442 F.2d at 860.

Nevertheless, I agree with the majority that any error in the district court's examination of defense witnesses is insufficient to justify reversal. Appellant has failed to demonstrate that the judge's conduct was so egregious as to constitute a constitutional violation, and the government had sub-

stantial evidence pointing to guilt. But I think that the record clearly evidences overzealousness on the part of the court below. The judge's questioning was relatively extensive and opened new areas of inquiry, questions were asked only of defense witnesses, *cf. Barbour,* 420 F.2d at 1322, and defense counsel did object to the judge's intervention. The proper exercise of discretion would have been to suggest appropriate questions to counsel and to limit substantially the examination actually conducted by the court. We ought not encourage trial judges to be nonchalant about the line between impartial elucidation and prosecution.

---

2. The jury could quite reasonably have inferred from the nature of the judge's questions that he found the defense witnesses incredible. In response to one witness' uncertainty about appellant's activities during a prior visit, for example, the judge asked, "You mean your brother visited you and you are not sure whether you told your mother he was there?" and "You don't know who he stayed with?" Tr. at 203,

202. Moreover, in questioning appellant's mother, the judge queried, "What time would he get in, what time would he go, where did he go? You know this on the other date, how about this date?" Tr. at 172–73. These inquiries do not have the qualities of neutral questions aimed at clarification, even when viewed prospectively rather than "in the brilliant glare of hindsight." *Green,* 429 F.2d at 760.