**UNITED STATES of America**

v.

**Robert HAYWOOD, Appellant.**

**No. 23935.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 9, 1971.

Decided April 20, 1972.

Mr. Steven M. Katz, Chevy Chase, Md. (appointed by this court), with whom Mr. Marvin M. Waldman, Washington, D. C. (also appointed by this court) was on the brief, for appellant.

Mr. Charles H. Roistacher, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time briefs were filed, John A. Terry and Miss Mary E. Folliard, Asst. U. S. Attys. at the time the brief was filed, were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and ROBINSON and WILKEY, Circuit Judges.

FAHY, Senior Circuit Judge:

On December 16, 1966, in Haywood v. United States, No. 20262, this court affirmed appellant's conviction of second degree murder on an indictment of first degree murder under 22 D.C.Code § 2401. We also affirmed his conviction of carrying a pistol without a license, in violation of 22 D.C.Code § 3204. His sentence was six to twenty years for murder and one year for the Section 3204 offense.[1]

The present appeal is from denial by the District Court without a hearing of appellant's *pro se* motion to vacate his sentence, filed under 28 U.S.C. § 2255. The issues initially briefed and argued by counsel are (1) whether certain evidence admitted at trial that had been obtained pursuant to a search warrant issued by a Maryland Justice of the Peace should have been excluded because the warrant was not issued in accordance with Rule 41(a), Fed.R.Crim.P., and (2) whether appellant was denied due process of law because the prosecution's summation to the jury was unduly prejudicial and amounted to a constitutionally impermissible comment upon his failure to testify. We invited supplementary briefs on the question whether a Maryland Justice of the Peace was a court of record and, if not, whether for that reason the issuance of the search warrant contravened the Fourth Amendment. We also called counsel's attention to Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), which holds that only a "neutral and detached magistrate" is authorized to issue a search warrant valid under the Fourth Amendment.

In addition to the two matters presented by counsel, as above, the *pro se* Section 2255 motion alleges that the conviction was based on an "illegal arrest and illegal search and seizure" under the Fourth Amendment, and that the sentence was imposed in violation of appellant's Sixth Amendment right to the effective assistance of counsel, as to which it is alleged as follows:

In this Capital Case, counsel neglected to file any pre-trial motions to suppress or what have you, even though petitioner specifically requested that he file a motion to suppress the evidence obtained by the illegal search and seizure. A further request was made just prior to trial that since he, (counsel), did not file the motion to suppress, to secure for the Court's perusal, a copy of the search warrant.

At trial, counsel failed to determine for the record the circumstances under which either the evidence obtained by the search or the palm print which was introduced as evidence and admitted were obtained and did not cross

1. The conviction of violation of Section 3204 is not now in question.

examine any witness who testified regarding such evidence, nor did counsel make any objections to the statement by the Government Prosecutor that the search was authorized by a legal warrant.

As to the claimed violation of the Fourth Amendment, the motion alleges that appellant's farm home and the area around it were searched on a warrant issued by a Justice of the Peace of Maryland, that five of the 23 empty cartridge cases found at the farm were presented as evidence at trial, that the search warrant authorized a general search for narcotics and narcotic paraphernalia and implements of crime, and that no copy of it was given petitioner nor have subsequent efforts to obtain one been fruitful. Before discussing the legal questions raised by these allegations of the Section 2255 motion, we outline the relevant factual situation.

Shortly after midnight on August 27, 1965, following gunfire heard in the vicinity, the deceased was found unconscious in an alleyway off Upshur Street, Northwest, in this City. One witness testified he saw appellant, and others testified they saw a man with his walk and build, exit seconds later from the alleyway and hail a taxi. Appellant went to the Greyhound bus station where he spoke with a redcap porter and boarded a bus. A cab driver in Hagerstown, Maryland, picked up appellant after he alighted from the bus and drove him twelve miles to his farm in the mountains. Later that day, appellant was arrested at the farm. The next day a search of the farm was conducted by police purporting to act pursuant to the challenged warrant. The officers recovered a slug from a fence post and twenty-three shell casings from elsewhere on the property.[2]

At trial it was established that the two slugs removed from the body of the deceased and one from the door of deceased's automobile were each fired from a .38 caliber Colt revolver or Spanish-made copy of a Colt revolver. A gunshop owner testified that within six months prior to the crime he had sold two Colt .38 pistols to appellant. A palm print lifted from the door of deceased's car matched that taken from appellant's palm the day of his arrest, and several witnesses either placed appellant, or a man of his walk and build, leaving the vicinity of the scene of the crime seconds after gunfire was heard.

With the foregoing evidence before the jury, defense counsel did not object to admission in evidence of the slug from the farm fence post and five of the shell casings seized at the farm. A firearms expert testified they were .38 caliber and were manufactured by the same company that had manufactured the slugs removed from deceased's body and car. This witness further testified that they had been fired from a .38 caliber Colt revolver or a Spanish-made copy of a .38 caliber Colt revolver.

Prior to the introduction, as above, of the evidence secured by the search, Government counsel commented, "it [the farm slug] is no good to us as evidence." Moreover, defense counsel elicited from the firearms expert on cross-examination that it was impossible to conclude that the slugs recovered from deceased's body and car and the slug found in the farm fence post were fired from the same weapon, and, also, that there were "many thousands" of Colt .38 revolvers like the one from which the slugs had been fired.

I

We consider first the attack on the summation to the jury. Since this issue was not raised in the Section 2255 motion, error cannot be attributed to the District Court for not holding a hearing on the issue. Moreover, we may now dispose of this contention. Cf. Hol-

---

2. There was also evidence, adduced on cross-examination by defense counsel, that an officer, other than the one testifying, found a .38 caliber Colt pistol at the farm. It was not offered in evidence.

land v. United States, 144 U.S.App.D.C. 106, 109, 444 F.2d 981, 984, cert. denied, 404 U.S. 843, 92 S.Ct. 140, 30 L.Ed.2d 78 (1971). While we do not approve the argument, its undesirable features were not so unfair and prejudicial as to amount to a denial of due process of law or to an impermissible comment on appellant's failure to testify. Defense counsel apparently did not think otherwise, for he did not object. Although a lack of objection is not decisive, it is of some significance in appraising the situation as it appeared at the time. *See* Milton v. United States, 71 App.D.C. 394, 110 F.2d 556 (1940).

## II

■■ The issue as to the validity of the search warrant is more difficult. Appellant contends it was a "federal search" which required compliance with Rule 41. It was conducted by members of the District of Columbia Metropolitan Police Department and the evidence obtained was examined by federal experts who later testified at the trial in a federal court. This degree of federal involvement was more than sufficient to constitute it a federal search. Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949). *See also* Navarro v. United States (I), 400 F.2d 315 (5th Cir. 1968). However, posited solely as noncompliance with Rule 41, we do not think the issue is cognizable under Section 2255.

■ The Federal Rules of Criminal Procedure are carefully tailored ground rules for fair and orderly procedures in administering criminal justice. Rule 41 embodies standards which conform with the requirements of the Fourth Amendment.[3] The standards, however, are not coextensive with the Amendment. Rather they are more specific, and, therefore, more stringent, *cf.* United States

v. Navarro (II), 429 F.2d 928, 932 (5th Cir. 1970) (concurring opinion). A federal search in violation of the Rule affords an accused the right at trial to the exclusion of evidence thereby obtained. Such a violation, however, *does not in and of itself amount to a violation of the Fourth Amendment.* There is no question that the search warrant in this case did not conform with Rule 41, for the Maryland Justice of the Peace was not, as required by Rule 41(a), a court of record. *See* Hahn v. State, 188 Md. 166, 52 A.2d 113 (1947).[4] But *no* objection was raised to the evidence in question at trial, or until the Section 2255 motion was filed. This was too late to obtain the right to relief due alone to violation of the Rule. Nevertheless, the challenge to the validity of the search and seizure on Fourth Amendment grounds does remain available under the Section 2255 motion. And if this challenge is sustainable appellant would be entitled to relief, for the fruits of the search and seizure were relevant and material. They reinforced other circumstantial evidence pointing to appellant's possible guilt. *See* Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), where it is held, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

We accordingly turn to the challenge under the Fourth Amendment.

## III

■ Appellant argues that a Maryland Justice of the Peace is not by reason of Coolidge v. New Hampshire, *supra*, the neutral and detached magistrate required by the Fourth Amendment. In *Coolidge* the New Hampshire Attorney General issued a search warrant in his capacity as Justice of the Peace, as he was authorized to do by state law. The

---

3. "The purpose of Rule 41 is to carry out the mandate of the fourth amendment." Navarro v. United States (I), 400 F.2d at 318.

4. The Government advises the court that on July 1, 1971, a new system of District Courts was established in Maryland, and that the office of Justice of the Peace was abolished.

Supreme Court invalidated the warrant on the ground that a Justice of the Peace who is at the same time a prosecutor is inherently non-neutral. We cannot read *Coolidge* to go so far, however, as to say that all Justices of the Peace lack the requisite neutrality. Rather, we read *Coolidge* to say that if a Justice of the Peace has prosecutorial functions, he suffers from unacceptable bias built into his job by the laws of his State.

■ Here the Maryland Justice of the Peace had no prosecutorial functions as far as the record before us demonstrates. He did have certain limited powers of arrest, as do all judges, and, indeed, all citizens; and the Maryland Constitution designated him a "conservator of the peace," as it does all Maryland judges. But such characteristics do not remove the Maryland Justice of the Peace from the realm of required neutrality.

### IV

■ Appellant challenges the search and seizure on other Fourth Amendment grounds. The facts necessary to a decision with respect to those challenges, however, were not developed in the District Court, such as whether probable cause was presented to the magistrate for issuance of the warrant, the scope of the search authorized by the warrant, its specificity, its service upon appellant, whether the search exceeded the authority granted by the warrant, and the validity of the return made under it. None of these matters can be determined from the record. Were this all, we could not sustain the denial of a hearing on the Section 2255 motion, for the motion, files and record would not conclusively show that appellant was entitled to no relief. Two other factors to be discussed, however, bear

upon the question whether a hearing on the validity of the search and seizure was required. One is that no objection was made to the admission at trial of the evidence seized under the warrant. When it was offered in evidence defense counsel stated, "I have no objection." Secondly, no contention was made about the evidence when the case was before this court on direct appeal. In these circumstances the question arises whether there was a deliberate bypassing of the orderly procedures available to appellant. If so, a discretion resided in the District Court to deny relief, even were the search constitutionally unlawful:

> [T]he § 2255 court may in a proper case deny relief to a federal prisoner who has deliberately by-passed the orderly federal procedures provided at or before trial and by way of appeal —e. g., motion to suppress under Fed.Rule Crim.Proc. 41(e) or appeal under Fed.Rule App.Proc. 4(b). Fay v. Noia, [372 U.S. 391] n. 3, at 438 [83 S.Ct. 822, 9 L.Ed.2d 837]; Henry v. Mississippi, [379 U.S. 443] n. 3, at 451–454 [85 S.Ct. 564, 13 L.Ed.2d 408].

Kaufman v. United States, 394 U.S. 217, 227 n. 8, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). *See also* Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Thornton v. United States, 125 U.S.App.D.C. 114, 121, 368 F.2d 822, 829 (1966) (dissenting opinion of Judge Wright).[5] Once again, this cannot be determined on the present record. Appellant, in his *pro se* Section 2255 motion, alleges that he specifically requested trial counsel to file a motion to suppress the evidence, that just prior to trial a further request was made that since counsel had not filed the motion to suppress, he secure for the court's approval a copy of the search warrant. Appellant further alleged that at trial, counsel failed to de-

---

5. The majority opinion in *Thornton* expressed no views on the subject now discussed. The majority held that the erroneous admission of evidence which was the fruit of an unlawful search was not cognizable under a Section 2255 motion. On that point Judge Wright dissented, in a position which was approved by the Supreme Court in Kaufman v. United States, *supra*.

termine for the record the circumstances under which the evidence, which was introduced at trial, was obtained by the search, and that he did not cross-examine any witness who testified regarding the evidence, or object to the statement of the prosecutor that the search was authorized by a legal warrant. These unresolved allegations are quite material to the question whether there was a deliberate bypassing, which could be attributed to appellant, of the orderly procedures. A remand is required.

## V

On the remand, alternative procedures are available to the District Court.

A. The court may first determine whether the search and seizure were valid under the Fourth Amendment. If so, the evidence was admissible and appellant would be entitled to no relief by reason of its admission at trial. The Government has not suggested the possible application of Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L. Ed. 898 (1924), to the slug or casings recovered pursuant to the search warrant, and the record before us does not call upon us to apply that decision.

B. Alternatively, the court may first determine whether the failure of counsel to object to the evidence or to raise the issue as to its admissibility on the direct appeal amounted to deliberate bypassing, attributable to appellant, of orderly procedures provided at or before trial and by way of appeal. *Kaufman, supra.* If the court finds such deliberate bypassing, it may deny relief without inquiring into the validity of the search and seizure, with the following qualification. Even were the court to find a deliberate bypassing attributable to appellant, nevertheless if appellant shows that the ends of justice would be served by reaching the merits of his constitutional claim, the court should determine the question of the validity of the search and seizure. Sanders v. United States, 373 U.S. 1, 16–17, 83 S.

Ct. 1068, 10 L.Ed.2d 148 (1963). In such case "the federal judge clearly has the power—and, if the ends of justice demand, the duty—to reach the merits. *Cf.* Townsend v. Sain, [372 U.S. 293] 312, 318, 83 S.Ct. 745, 9 L.Ed.2d 770." 373 U.S. at 18–19, 83 S.Ct. at 1079. *See also* Thornton v. United States, 125 U. S.App.D.C. at 125–126, 368 F.2d 822.

The guides to be followed in evaluating whether a deliberate bypassing has occurred are found in Fay v. Noia, 372 U.S. at 438–439, 83 S.Ct. 822, 9 L.Ed.2d 837. Though that case involved a federal habeas corpus attack on a state conviction, the guidelines laid down apply no less to this federal collateral attack by Section 2255 on a federal conviction. Sanders v. United States, 373 U.S. at 18, 83 S.Ct. 1068. In *Noia* the Court stated:

But we wish to make very clear that this grant of discretion [to deny relief in event of deliberate "by-passing"] is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed.2d 1461]—"an intentional relinquishment or abandonment of a known right or privilege" —furnishes the controlling standard.

372 U.S. at 439, 83 S.Ct. at 849. The Court went on to say that the trial judge must not deny relief unless the prior failure to vindicate a claim was "understandingly and knowingly" waived "after consultation with competent counsel or otherwise" for strategic, tactical or any other reason fairly described as deliberate, and "only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default." The Court then added:

At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner.[44] Cf. Carnley v. Cochran, 369 U.S. 506, 513–517 [82 S.Ct.

884, 888–891, 8 L.Ed.2d 70] ; Moore v. Michigan, 355 U.S. 155, 162–165 [78 S.Ct. 191, 195–197, 2 L.Ed.2d 167]. A choice made by counsel not participated in by the petitioner does not automatically bar relief. (footnote omitted)

372 U.S. at 439, 83 S.Ct. at 849. *Cf.* Henry v. Mississippi, 379 U.S. 443, 451–452, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

 In sum, should the District Court find either (1) that relief is not barred under the deliberate bypassing rule, applied under the above standards, or (2) that, even were there a deliberate bypassing the ends of justice would be served by determining whether the evidence was the fruit of an unconstitutional search or seizure, the issue of the validity of the search and seizure should be reached.[6] In following the approach of either (1) or (2) should there eventuate a finding by the court that the evidence was inadmissible, a new trial should be granted, for the use at trial of evidence obtained by an unconstitutional search or seizure violates the Fourth Amendment. Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) ; Fay v. Noia, 372 U.S. at 402, 83 S.Ct. 822; and the error would not here be harmless.

## VI

 Necessarily involved in the proceedings to be had on the remand as above outlined is the claim of ineffective assistance of counsel, cognizable under the Section 2255 motion as violative of the Sixth Amendment.[7] The motion, with its allegations in this regard, including particularly those with respect to the search and seizure, and consequent admission at trial of the fruits thereof, preclude denial of the motion without a hearing, for the motion, files and record do not conclusively show that appellant was entitled to no relief. In this respect, and in all others discussed, we imply no criticism whatever of counsel. The question, rather, must be considered in terms of whether appellant's conviction rests in part upon denial of a constitutional protection afforded by either the Fourth or Sixth Amendment. If so, it cannot stand. Fay v. Noia, 372 U.S. at 402, 83 S.Ct. 822.

Remanded for further proceedings consistent with this opinion.

WILKEY, Circuit Judge, concurring:

I concur in Judge Fahy's carefully reasoned opinion and the action the court takes here, not because I am convinced of the wisdom of the action, but because I feel it is compelled by the Supreme Court's 5–3 decision in Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). The application we make today of the Supreme Court's rule in *Kaufman* illustrates how wide the door was opened by that decision, and perhaps suggests that the Court would have been wiser to follow the majority decision of this court in Thornton v. United States, 125 U.S. App.D.C. 114, 368 F.2d 822 (1966), rather than the minority opinion in that case. If the consequences of *Kaufman* now appear thoroughly undesirable, the matter is not beyond rectification by the High Court, although it is by us.

A *sua sponte* suggestion for rehearing by the court *en banc* was denied, in connection with which MacKINNON,

---

6. As to the manner of proceeding on the remand insofar as the personal presence of appellant, and related questions are concerned, *see* Sanders v. United States, 373 U.S. at 20, 83 S.Ct. 1068.

7. " * * * The question * * * is whether his representation was so ineffective that Appellant was denied a fair trial." Harried v. United States, 128 U.S.App.D.C. 330, 389 F.2d 281,

284–285 (1967). However, it requires a less "powerful showing of inadequacy" to sustain appellant's burden on direct appeal than is required on collateral attack. Bruce v. United States, 126 U.S.App.D.C. 336, 340, 379 F.2d 113, 117 (1967).

United States v. Hammonds, 138 U.S. App.D.C. 166, 169, 425 F.2d 597, 600 (1970).

Circuit Judge, makes the following statement:

MacKINNON, Circuit Judge:

I vote for *en banc* consideration of this case in order to maintain uniformity of our decisions, Fed.R.App.P. 35, which generally do not authorize hearings on insubstantial grounds.

The court's opinion directs a remand of a case tried in 1966 to consider whether there was constitutional error in admitting a number of shell casings into evidence because they were allegedly obtained by an inadequate search warrant. However, because of the rule announced in Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), this objection only relates to 5 shell casings which were found in the house and does not relate to 23 shell casings found on the ground at the front of the farm house (Tr. 164, 166). There was positive testimony that the 5 shell casings bore the head stamp initials "W.R.A." (Tr. 170), which indicated they were made by the same firearms manufacturing company that manufactured the slugs which killed the deceased victim. There is nothing in the record to indicate that the 5 casings were any different from the 23 casings. They all formed part of *one exhibit*, with the 5 in a separate envelope (No. 6). Thus it appears that the 5 casings were merely cumulative evidence to the 23. Counsel did not object to their admission and I would not permit the accused to raise the point at this late date. In the years that have passed since the conviction was affirmed, all the casings have been destroyed, and the Government, through no fault of its own, is necessarily prejudiced to some extent.

And while the remand does not expressly turn on these points, I also object to the comments in the court's opinion, because of the tendency of dicta to confuse, that the search violated Fed.R. Crim.P. 41 and the Supreme Court's decision in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Fed.R.Crim.P. 41(a) [1] by virtue of its permissive wording merely *authorizes* certain courts of record and United States Commissioners (who are not courts of record) to issue search warrants. It does not require all search warrants in federal cases to be issued by courts of record. It does not prohibit federal authorities from using search warrants authorized by the laws of the states and it specifically does not interfere with searches specially authorized.[2]

In my view the court's opinion also misreads Coolidge v. New Hampshire, *supra*, in applying its sanctions to the Maryland Justice of the Peace who issued the search warrant here when it states:

> [W]e read *Coolidge* to say that if a Justice of the Peace has prosecutorial functions, he suffers from unacceptable bias built into his job by the laws of his State.

*Coolidge* holds that it is a violation of the Fourth Amendment for a search warrant to be issued by a person who occupies the dual positions of prosecutor (or police) and Justice of the Peace *with respect to the offense to which the warrant relates*; the reason being that the warrant would not be issued by an impartial magistrate. But certainly a Maryland Justice of the Peace is not involved in any way in the prosecution for a murder committed in the District of

---

1. Fed.R.Crim.P. 41(a) provides:

 A search warrant authorized by this rule may be issued by a judge of the United States or of a state, commonwealth or territorial court of record or by a United States commissioner within the district wherein the property sought is located.

2. Fed.R.Crim.P. 41(g) provides:

 This rule does not modify any act, inconsistent with it, regulating search, seizure and the issuance and execution of search warrants in circumstances for which special provision is made. The term "property" is used in this rule to include documents, books, papers and any other tangible objects.

Columbia. To say that all search warrants issued by judges and justices of the peace in the State of Maryland are unconstitutional because the Maryland Constitution designates them "conservator[s] of the peace," while leaving arrests and prosecutions to the police and prosecutors, is to completely misapply *Coolidge*.