The **UNITED STATES of America**

v.

**Robert HAYWOOD.**

Crim. No. 1039-65.

United States District Court,
District of Columbia.

July 2, 1973.

Craig C. Bradley, Asst. U. S. Atty.,
Washington, D. C., for the Government.

Morton J. Frome, Chevy Chase, Md.,
for petitioner.

## MEMORANDUM OPINION

LEONARD P. WALSH, Senior District Judge.

This matter is before the Court on remand by the United States Court of Appeals for the District of Columbia, United States v. Haywood, 150 U.S.App.D.C. 247, 464 F.2d 756 (decided April 20, 1972). There was a delay of approximately one year from the date of remand until an evidentiary hearing was held on April 5, 1973. This delay was due in part to petitioner's request in August 1972 for leave to discontinue proceedings *in forma pauperis* and for appointment of counsel. On September 8, 1972 an Order granting leave to retain counsel of petitioner's own choosing was signed by this Court. A status call was set for October 3, 1972, and at the request of petitioner's counsel, who had just entered an appearance as retained counsel, a continuance was granted until November 21, 1972. From this time until April 5, 1973 both counsel for petitioner and counsel for the government requested and received three additional continuances.

On April 5, 1973, pursuant to the remand an evidentiary hearing was held to determine whether the sentence and judgment in this case should be vacated under Title 28, section 2255. The two issues to be presented before this Court were whether there was an illegal search and seizure at petitioner's farm, and whether petitioner had waived his right to object to this search and seizure because of a deliberate by-passing of the orderly procedures available.

Petitioner stands convicted of second degree murder and carrying a dangerous weapon. He is currently on parole from a sentence imposed by this Court on June 17, 1966, of from 6 to 20 years on the second degree murder count, and a concurrent one year sentence for carrying a dangerous weapon. The judgment of the District Court was affirmed, *per curiam,* on December 16, 1966. Petition for rehearing *en banc* was denied by *per curiam* order on February 21, 1967.

On the evening of August 26, 1965, some time around eleven o'clock, Reuben Heldon Harrell, Sr., received a telephone call, and as a result of that call left his apartment. At approximately twelve-thirty A.M., several shots were heard in an alley behind an apartment house located in the 4200 block of Second St.,

N.W. Reuben Heldon Harrell, Sr. was found shot to death shortly after the shots were heard. The petitioner was positively identified by a witness who testified that he saw Mr. Haywood come out of the alley soon after the shots were fired. At trial there was testimony that Mr. Haywood was seen boarding a bus at the Trailways Station at three A.M. that same morning. The bus was en route to Hagerstown, Maryland, where Mr. Haywood owned a farm. A cab driver remembered driving petitioner from the bus stop in Hagerstown to Mr. Haywood's farm some time after four A.M. The petitioner was arrested on his farm later the same day by Maryland police on an outstanding arrest warrant charging petitioner with first degree murder. After petitioner's arrest, a search warrant was obtained and a search of Mr. Haywood's farm was conducted. The only evidence recovered was a spent bullet and some empty shell casings. Five of the shell cases were found inside the premises. The ballistics expert testified that the slug found on petitioner's farm was a .38 special lead bullet and was manufactured by Remington or Peters Company. The bullets removed from the deceased and from the car door in which the deceased was found were .38 caliber, but were manufactured by either Winchester or Wesson Company. However, the five shell casings recovered inside the premises were manufactured by Winchester. The government expert could not connect the slugs taken from the scene of the crime and the five shell casings as coming from the same weapon. A gun-shop owner testified at the trial that he sold Mr. Haywood two .38 caliber revolvers in March and April of 1965. However, defense counsel elicited from the ballistics expert that there were many thousands of .38 caliber revolvers of the same type used to kill Mr. Harrell.

The Court will first make a determination as to whether counsel's failure to object to the evidence at trial or "to raise the issue as to its admissibility on the direct appeal amounted to deliberate bypassing, attributable to appellant . . . ." United States v. Haywood, *supra.*

This Court will follow the guidelines set forth in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), in evaluating whether there was a deliberate bypass. The Supreme Court in *Noia* held:

"If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims . . . ., whether for strategic, tactical, or any other reasons that can fairly be described as . . . deliberate bypassing . . . , then it is open to the federal court on habeas to deny him all relief . . . .". 372 U.S. at 439, 83 S.Ct. at 849.

This Court, after holding a hearing on April 5, 1973, and giving both counsel an opportunity to submit further memoranda, finds that there was an intentional bypassing of the orderly procedures and such bypassing was attributable to petitioner.

At the remand hearing petitioner's trial counsel testified that he had considered the possibility of attempting to suppress the shell cases prior to trial. However, he concluded that from a strategy standpoint the admission of this evidence would help to bolster the defense position that the government's case against Mr. Haywood was a very weak chain of circumstantial evidence. Defense counsel testified that this conclusion was based on several considerations, including the following: Mr. Haywood was not going to testify; there would be independent evidence showing that petitioner had purchased two .38 caliber pistols; the government could make no connection between the shell casings found at the farm and the bullets which inflicted the fatal wounds; and lastly, the search did not produce any .38 caliber revolver that could connect Mr. Haywood with the homicide. Trial counsel's strategy is supported by

a careful examination of the trial transcript.

The Government in its opening statement told the jury that they would prove:

"the bullets that entered the deceased's body were from a .38 caliber pistol. We [the prosecution] propose to show that this defendant did have a .38 pistol, . . ." (Tr. 56).

The ballistics expert testified at trial that the murder weapon was either a Colt revolver or a Spanish made copy of a Colt revolver. The ballistics expert on direct examination testified that the Colt revolver was the second most popular weapon in this country. The government expert testified that the deceased was shot by .38 special bullets of the Winchester or Western manufacture. He also testified that the five shell casings were from a .38 Special cartridge manufactured by the Winchester Company. Although the shell casings were of the same caliber and manufacture as the bullets that were used to kill the deceased, the government never referred to these shell casings in either their opening, closing or rebuttal statements to the jury. This was probably because the government experts could not connect any of the evidence found at the farm with the homicide.

The Court believes that there was a deliberate and consistent trial strategy of defense counsel in not objecting to the admissibility of the shell casings recovered from petitioner's farm. In United States ex rel. Cruz v. LaVallee, 448 F.2d 671 (2nd Cir. 1971), cert. den., 406 U.S. 958, 92 S.Ct. 2064, 32 L.Ed.2d 345, the defendant Cruz argued that the defense counsel's trial strategy could not be considered a waiver of his constitutional right to an evidentiary hearing on the admissibility of his confession at trial. The Appellate Court rejected this contention and stated: ·

"The Supreme Court stated in Henry v. Mississippi that 'the deliberate bypassing by counsel of the contemporaneous-objection rule as a part of trial strategy would have [the] effect' of precluding the defendant from later asserting constitutional claims, even where the trial strategy was adopted by counsel without prior consultation with the defendant. 379 U.S. [443] at 451–452, 85 S.Ct. [564] at 569 [13 L.Ed.2d 408]. A lawyer must be able to determine questions of strategy during trial; and unless there are exceptional circumstances or unless the lawyer is so incompetent as to deprive the defendant of the right to effective assistance of counsel, his decision regarding trial strategy must be binding." 448 F.2d at 679.

As pointed out in Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed. 2d 408 (1965), an attorney's deliberate choice of strategy would be binding on the petitioner and preclude him from a decision on the merits of his federal claim except in "exceptional circumstances." The Court does not believe there is any evidence to warrant a finding of either "exceptional circumstances" or incompetency of trial counsel. The Supreme Court in Henry v. Mississippi, *supra*, did not define "exceptional circumstances" but merely cited the case of Whitus v. Balkcom, 333 F.2d 496 (5th Cir. 1964). In the *Whitus* case the trial strategy was a matter of choosing the lesser of two evils. There had been a systematic exclusion of Negro jurors in the jurisdiction in which the two Negro defendants were being tried for murdering a white farmer. The defendants could either elect to challenge the all-white jury system and stir-up hostility and at the same time prejudice themselves in any future trial, or they could choose to be prejudiced by being deprived of a trial by a cross section of the community. The court, in effect, held that this was no choice and that the "tacit agreement by the bar of that county not to raise the constitutional issue" 333 F.2d at 507, would not be binding on the defendants, unless the state could show a true waiver on the part of the defendants.

The petitioner in Fay v. Noia, *supra*, was faced with a similarly "grisly" choice of whether to appeal a conviction for murder and if successful, run the risk of retrial and a death sentence or to be content with a life sentence previously imposed. The court believed that this was not a choice by *Noia* nor a tactical or strategic step, or in any way a deliberate circumvention of any state procedures. The court simply stated that *Noia* "declined to play Russian roulette . . .".

In the case before this Court there was no such choice of the lesser of two evils. The petitioner's trial counsel testified at the hearing that he was well aware of the possibility of raising the search and seizure issue. He stated that he believed that its admission would be more beneficial since nothing incriminating was produced. In the application and affidavit for a search warrant the affiants stated that "there was probable cause to believe that instrumentalities of the crime (THE MURDER OF REUBEN H. HARRELL, JR.) which would be a .38 caliber revolver, a white shirt, a dark coat or sport coat, slacks or trousers, and a dark hat with brim; and NARCOTICS & PARAPHERNALIA are being kept at the premises . . .". The only evidence recovered after a search was made were the bullet and some shell casings. Therefore, it was perfectly logical and consistent for trial counsel to believe that the evidence seized pursuant to this search warrant would aid in Mr. Haywood's defense, since the shell casings could not be connected with the murder of Reuben Harrell.

Defense counsel testified at the evidentiary hearing that he could not recall whether petitioner specifically approved of his trial strategy, but he was certain that the petitioner was aware of the strategy, and did not object. Trial counsel also testified that prior to trial he visited the defendant two or three times a week at which time pre-trial strategy was discussed. Petitioner at one or more of these sessions told counsel that "he was in his hands or something to that effect." Counsel also testified that petitioner never asked him to suppress any evidence because if he had, then he, as trial counsel, would have filed the appropriate motions. This testimony of trial counsel is bolstered by a letter from petitioner to trial counsel in which he praised defense counsel's efforts in his behalf. This letter was written shortly after a jury had found petitioner guilty of second degree murder and carrying a dangerous weapon. The letter dated April 23, 1966 stated in part:

"... I think you won the case even though I am still here (in jail). I assure you that you should feel proud of your work, as I am . . ., and I feel the decision will be reversed, but I do wish you could have been completely victorious. . . ."

Furthermore, there was no indication anywhere in the letter of any dissatisfaction petitioner had with the way in which trial counsel represented him. Petitioner stated at the evidentiary hearing that he had raised the question of suppressing the evidence with his newly appointed appellant counsel at a hearing on a motion for a new trial held May 20, 1966. Petitioner testified that he had been told by appellant counsel that this issue would be raised at the hearing for a new trial. However, appellant counsel never did raise the issue at the May 20th hearing nor when this case was argued before the United States Court of Appeals for the District of Columbia. Unfortunately, this Court cannot speculate as to why appellate counsel did not raise this issue because counsel is now deceased and his records were destroyed by fire a few years ago. However, this Court believes that the evidence adduced at the evidentiary hearing was sufficient to make a determination on the issue of deliberate bypass.

At the conclusion of the hearing held on May 20, 1966, and after various of the petitioner's motions were denied, pe-

titioner made a statement to the court. He said in part:

". . . I have to say that I did not have effective assistance of my counsel and which I claim is a violation of my constitutional rights under the Sixth Amendment . . ." "I respectfully submit to the Honorable Court that my attorney did not file in a capital case one pretrial motion."

"I further submit that the evidence used in the case, the cartridge cases and the testimony of the F.B.I. agents, was evidence obtained by an illegal search and seizure under the Fourth Amendment of the Constitution of my premises and that the evidence was admitted into the court and that my lawyer knew from conversations with me during my nine months incarceration that this evidence was so obtained. Yet he filed no motion to have such evidence suppressed." (Motion for new trial, Tr. 32–33).

Thus, for the first time, the petitioner expressed his objections to the admission of the shell casings, as well as his dissatisfaction with the way in which trial counsel handled his case. This statement is contradictory to the high praise petitioner had for defense counsel in the previously mentioned letter written a few days after the trial. After a jury returns a guilty verdict and a defendant is confronted with the realization that he is soon to be sentenced for a very serious offense it would seem to this Court that many of the statements made by a defendant are of a self-serving nature. Therefore, the Court cannot give too much weight to what petitioner said at the hearing on May 20, 1966.

In holding that petitioner has waived his right to object, the Court has taken into consideration the reasonableness of trial counsel's strategy at the time of trial, as well as the statements made by petitioner and trial counsel at the evidentiary hearing concerning that trial strategy. This Court concludes that such strategy supports a strong inference of deliberate bypass. Fay v. Noia, *supra*.

The petitioner has not met his burden of showing that the "ends of justice would be served" by having the court decide the merits of petitioner's constitutional claim.

Accordingly, the motion to vacate sentence and judgment should be, and it is, hereby denied.

So ordered.