UNITED STATES of America

v.

James W. McCORD, Jr., a/k/a Edward
J. Warren a/k/a Edward J.
Hamilton, Appellant.

No. 73–2252.

United States Court of Appeals,
District of Columbia Circuit.

Argued En Banc June 14, 1974.

Decided Dec. 12, 1974.

Certiorari Denied April 21, 1975.

See 95 S.Ct. 1656.

Bernard Fensterwald, Jr., and William G. Ohlhausen, Washington, D. C., for appellant.

Sidney M. Glazer, Counsel to the Special Prosecutor, with whom Leon Jaworski, Special Prosecutor, Philip A. Lacovara, Counsel to the Special Prosecutor Maureen E. Gevlin, David H. Kaye and Robert L. Palmer, Asst. Special Prosecutors, were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, LEVENTHAL, ROBINSON, MacKINNON, and WILKEY, Circuit Judges, sitting en banc.

BAZELON, Chief Judge:

James McCord was arrested by Washington, D.C. police with four other persons at approximately 2:00 a. m. on June 17, 1972 in the offices of the Democratic National Committee at the Watergate Office Building. McCord had on his person or in his control documents removed from the files of the Democratic National Committee, burglary tools, electronic wiretapping and eavesdropping devices and a small mace dispenser. Along with G. Gordon Liddy, McCord was tried before a jury commencing on January 8, 1970 and was convicted on January 30 of three counts of illegal interception of oral and wire communications,[1] two counts of possession of intercepting devices,[2] two counts of burglary,[3] and one count of conspiracy to commit the foregoing offenses.[4] He has filed a petition seeking collateral relief from that conviction as well as an appeal from the sentence entered by the District Court on November 9, 1973.

We affirm McCord's conviction in its entirety. In Part I of our opinion, we discuss certain procedural issues created by the pendency of both an appeal and a petition for collateral relief. (Pp. 339–342). In Part II, we review McCord's claim that he deserves a new trial on the basis of newly discovered evidence and his claim that he has been subjected to a selective prosecution. We conclude that he has no valid defense to which this newly discovered evidence would be relevant (pp. 342–343) and alternatively, that the newly discovered evidence would not create a reasonable doubt about McCord's guilt. (Pp. 343–346). We furthermore hold that he has not timely asserted and has therefore waived his claim of selective prosecution. (P. 346). In Part III, we consider McCord's claim that Judge Sirica's allegedly "inquisitorial" conduct of McCord's trial is grounds for a new trial. We conclude that this claim is without merit. (Pp. 346–348). In Part IV, we proceed to review McCord's most important contention: that serious prosecutorial misconduct during his trial was so repugnant to civilized notions of criminal justice that his indictment should be dismissed. We reject this contention. (Pp. 348–351). Finally, in Part V, we address McCord's claim that he has been denied the effective assistance of counsel and find this ground for reversal is without merit. (Pp. 351–353).

I. *The Procedural Context of McCord's Claims of Error.*

On June 8, 1973, better than four months after his conviction and five months before his sentence, McCord moved the District Court for relief "in the nature of" a writ of error *coram nobis,* seeking a new trial on various grounds and also, in the alternative, a

---

1. *See* 18 U.S.C. § 2511(1)(a) (1970).

2. *See* D.C.Code, tit. 23, § 543(a) (1973).

3. *See* D.C.Code, tit. 22, § 1801(b) (1973).

4. *See* 18 U.S.C. § 371 (1970). Judgment was entered and sentence imposed on November 9, 1973. United States v. McCord, Crim.No. 1827–72 (D.D.C. filed Nov. 12, 1973).

judgment of acquittal.[5] While *coram nobis* is available to McCord in these circumstances,[6] we take, as does the Special Prosecutor, the part of his motion requesting a new trial on the basis of newly discovered evidence as filed under Fed.R.Crim.P. 33 since that Rule permits such a motion within two years of final judgment and may involve a lesser standard of proof than *coram nobis*.[7] The writ is available for that part of McCord's motion seeking a new trial on grounds other than newly discovered evidence or alternatively a judgment of acquittal.[8] However, we construe McCord's major arguments for acquittal as directed to defects in the indictment and thus actually request a dismissal of the indictment and not technically a judgment of acquittal. We see no reason in the nature of *coram nobis* or the principle of collateral relief generally which would prevent *coram nobis* from being used to obtain dismissal of an indictment. Accordingly, we hold that the writ may be properly used to seek dis-

**5.** Presumably McCord did not file a motion for judgment of acquittal under Fed.R. Crim.P. 29(c) and motion for a new trial under Rule 33 because he had failed to make such a motion within 7 days after the jury rendered its verdict.

Prior to trial McCord moved for disclosure of electronic surveillance on either himself or his attorneys. On appeal he contends that his rights under the Fifth and Sixth Amendments were violated by the District Court's refusal to order a file search to ascertain whether there had been such surveillance. This ground for appeal is without merit. The government did conduct a file search to determine whether there had been any electronic surveillance of McCord himself and the District Court ordered appropriate affidavits be filed to attest to this file search. The Chief Prosecutor submitted an affidavit that he had at no time requested electronic surveillance of McCord's attorneys. This is a sufficient effort where, as here, the appellant has come forward with absolutely no facts to establish any alleged surveillance on his attorneys nor any dates upon which this alleged surveillance occurred. *See* United States v. Alter, 482 F.2d 1016, 1025–1026 (9th Cir. 1973); United States v. Beverly, 468 F.2d 732, 749 (5th Cir. 1972).

**6.** *See* Thomas v. United States, 106 U.S.App. D.C. 234, 271 F.2d 500 (1959); Mathis v. United States, 369 F.2d 43 (4th Cir. 1966) (Sobeloff, J.). *Cf.* Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). The fact that McCord had not been sentenced at the time he filed the writ is irrelevant since it is indisputably clear that he was going to be sentenced and in any event *coram nobis* is available even after the sentence has run. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

The pendency of McCord's direct appeal does not moot his claim for collateral relief since only one of his defenses was raised in the trial court and, as will be discussed be-low, two defenses not raised in the trial court are not plain error. Thus, we are faced with the extraordinary circumstances necessary to consider a petition for collateral relief while the direct appeal is pending. *See* Womack v. United States, 129 U.S.App.D.C. 407, 395 F.2d 630 (1968); Welsh v. United States, 404 F.2d 333 (5th Cir. 1968).

In the discussion that follows we consider the grounds for issuance of a writ of error *coram nobis* as coterminus with the grounds for § 2255 relief or the grounds for issuance of a writ of habeas corpus. This follows from the fundamental precept of collateral relief that such relief "is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963), quoted in Peyton v. Rowe, 391 U.S. 54, 66, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1969). We adopted this principle in Laughlin v. United States, 154 U.S. App.D.C. 196, 203, 474 F.2d 444, 451 (1972), despite contrary dictum at n.10 to the effect that *coram nobis* is limited to correction of "factual errors." In *Laughlin* we treated a *coram nobis* petition as a § 2255 petition and reached the merits of certain alleged errors of law in appellant's original trial; we could in the instant case treat McCord's petition as seeking a writ of habeas corpus and under Peyton v. Rowe, *supra*, we could reach the merits of McCord's alleged errors of law. Finding this formality less than meaningful, we simply treat the three forms for seeking collateral relief as coterminus.

**7.** *See* 8A Moore's Federal Practice ¶¶ 33.02[3], 33.03[1] (2d ed. R. Cipes 1965).

**8.** *See* United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); United States v. Keogh, 391 F.2d 138 (2d Cir. 1968); United States v. National Dairy Prod. Corp., 313 F.Supp. 534 (W.D.Mo.1970).

missal of McCord's indictment.[9] McCord also appeals from the judgment of guilty and sentence entered on November 9.

 With the exception of the claims discussed in Part III *infra*, McCord did not raise any of the claims at trial that he now presses in this appeal. Thus, we cannot decide these claims on McCord's appeal from his sentence unless we find that the District Court's failure to rule on these claims on its own motion was plain error.[10] The individual views of the author of this opinion on the plain error rule are set out in the margin.* These various claims, which McCord asserts now on appeal, could be reached under the writ of error *coram nobis*. However, *coram nobis*, like § 2255 and the writ of habeas corpus, may collaterally attack only constitutional or jurisdictional errors or serious defects in the trial either not correctible on direct appeal or where exceptional circumstances justify the failure to appeal on those grounds.[11] Here McCord does appeal on the appropriate grounds but he cannot have us hear the appeal unless the claim is plain error since he did not raise the claims below. In order to accommodate the pendency of the appeal and the claim for collateral relief, we apply similar standards to determine whether a claim of error should be reached under principles of plain error and whether that claim may be reached under principles applicable to collateral relief.[12] This ruling relates to

9. *See* cases cited notes 6 & 8 *supra*; Note, Postrelease Remedies for Wrongful Conviction, 74 Harv.L.Rev. 1615, 1619–21 (1961).

10. Fed.R. Crim.P. 30, 51, 52(b); Silber v. United States, 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962); Johnson v. United States, 318 U.S. 189, 199–201, 63 S.Ct. 549, 87 L.Ed. 704 (1943); United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936). These cases make clear the following propositions: the doctrine of plain error encompasses those errors which are obvious, affect the substantial rights of the accused and if uncorrected would be an affront to the integrity and reputation of judicial proceedings.

We note the relation of the principles of waiver through failure to object at trial to Fed.R. Crim.P. 12(b)(2) which deems waived all defenses to an indictment not presented prior to trial. *See* Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). Our disposition of the case makes it unnecessary to consider whether McCord's defenses are within the class of defenses covered by Rule 12(b)(1).

* I have recently stated my views on the rationale of the doctrine of plain error and its relation to effective counsel and the responsibilities of the trial judge. *See* United States v. Leonard & Sarvis, 163 U.S.App.D.C. 36, 55–58, 494 F.2d 955, 974–977 (1974) (Bazelon, C. J. concurring in part, dissenting in part). Notwithstanding the lack of authority supporting them, I based those views on my opinions concerning the responsibilities of the trial judge for which there is substantial authority. *See* notes 38 & 41 *infra*. The plain error rulings in this opinion are consistent with my views. In particular the plain error rulings in this case concern novel and extremely doubtful defenses which if properly raised at any time must be supported by their factual predicate as developed by defense counsel. McCord's counsel did not develop any such factual predicate in this case and, therefore, the trial judge is under no responsibility to instruct on these problematic defenses.

I also note the relation of Fed.R. Crim.P. 12(b)(2) and plain error doctrine. I hesitate to include McCord's defenses within the class of defenses which must be asserted prior to trial since that might indicate that those defenses could not be argued to the jury. *See* Rule 12(b)(1): "Any defense . . . which is capable of determination without the trial of the general issue may be raised before trial by motion." The result of holding McCord's defenses within that class might be to restrict argument to the jury on defenses which might give rise to nullification. *See generally* United States v. Dougherty, 154 U.S.App.D.C. 76, 101, 473 F.2d 1113, 1138 (1972) (Bazelon, C. J. concurring in part, dissenting in part). This issue was confronted in United States v. Berrigan, 482 F.2d 171 (3d Cir. 1973). I would avoid the issue until its resolution is necessary to a decision.

11. United States v. Sobell, 314 F.2d 314, 323 (2d Cir.), cert. denied, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963) (§ 2255). *See* Kaufman v. United States, 394 U.S. 217, 223, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969); Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); Sunal v. Large, 332 U.S. 174, 179, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); United States v. Haywood, 150 U.S. App.D.C. 247, 251, 464 F.2d 756, 760 (1972); Tucker v. United States, 138 U.S.App.D.C. 345, 349 & n.26, 427 F.2d 615, 619 & n.26 (1970).

12. *Compare* sources cited note 10 *supra with* sources cited note 11 *supra*

a consolidated appeal and is not intended as an *en banc* ruling that any error that might have been noticed on the direct appeal under the plain error rule as a ground for reversal also warrants the granting of relief on collateral attack. A conceptually distinct issue is whether McCord has deliberately by-passed his remedies at trial or waived his claim to relief at trial such that he cannot press such a claim on his appeal or in his petition for collateral relief.[13]

## II. *The Claims Based on Newly Discovered Evidence and the Alleged Selective Prosecution.*

▆▆▆ McCord's motion for a new trial on the basis of newly discovered evidence encompasses three general claims. First, he presents a straightforward claim that new evidence which bears on his guilt or innocence has been discovered and standing alone it justifies a new trial. Second, he claims that this new evidence was within the control of the prosecution[14] and thus he deserves a new trial under the principle of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Third, he claims that the prosecution not only failed to disclose this evidence relevant to his guilt or innocence but actually used perjured testimony to obtain his conviction.

McCord points to four particular areas in which new evidence has been developed which could be relevant to his trial. First, McCord directs our attention to the fact that Jeb Magruder, deputy director of the Committee to Re-elect the President, and Herbert Porter, also asso-

ciated with that Committee, have both admitted that they perjured themselves at McCord's trial when asked whether they authorized or had knowledge of McCord's illegal entry into the Democratic National Committee offices. Second, McCord notices that former Acting Director of the FBI, Patrick Gray, has admitted destroying materials relating to the authorization of the break-in and that certain persons, possibly including John Dean, Counsel to the President, destroyed the contents of coconspirator Howard Hunt's safe in the White House, material which also might be relevant to the authorization of the burglary. Third, new evidence has come forward concerning the role of Howard Hunt and Gordon Liddy, co-conspirators with McCord in the Watergate entry, in the White House Special Investigations Unit, evidence allegedly relating to a domestic security justification for the Watergate break-in. Fourth, McCord claims there is other newly discovered evidence, largely on the various tape recordings of conversations between former President Richard Nixon and his subordinates, which directly implicates John Mitchell, former Attorney-General of the United States, and persons formerly in the White House in the authorization of the Watergate break-in.

▆▆▆ McCord's claims relating to the existence of newly discovered evidence and the prosecution's failure to disclose that evidence are really two sides of the same coin and both may be disposed of by the same reasoning. Unless the newly discovered evidence not disclosed by the prosecution would create in either

---

**13.** *See* Kaufman v. United States, 394 U.S. 217, 227 n.8, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969); Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); United States v. Haywood, 150 U.S.App.D.C. 247, 252, 464 F.2d 756, 761 (1972); United States v. DeFillo, 182 F.Supp. 782, 783 (S.D.N.Y.1959), aff'd, 277 F.2d 162 (2d Cir. 1960). A deliberate by-pass of the orderly procedures of objection at trial and on appeal is equivalent to a waiver and must be judged according to standards applicable to waiver. *See* United States v. Haywood, *supra*, 150 U.S.App.D.C. at 253–254, 464 F.2d at 762–763. Even if we find

such a deliberate by-pass or waiver, we might still reach the merits of the claim if the "ends of justice would be served . . . ." *Id.*, 150 U.S.App.D.C. at 253, 464 F.2d at 762. *See* Sanders v. United States, 373 U.S. 1, 16–19, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). We consider this last principle co-terminus with the test of plain error. *See* notes 10 & 12 *supra*.

**14.** The "prosecution" includes all agencies of the federal government involved in any way in the prosecution of criminal litigation. *See* United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642 (1971).

our minds or the minds of the jury "a reasonable doubt about appellant's guilt",[15] neither the existence of newly discovered evidence nor the prosecution's failure to disclose it is grounds for a new trial. In McCord's case, this newly discovered evidence not disclosed by the prosecution is simply not relevant at all to the basic issue at his trial: did he or did he not break into the offices of the Democratic National Committee with the intent to install or remove wiretaps and in concert with other individuals. Indeed, the evidence on that issue is virtually conceded by McCord. The only possible issue in a new trial to which this newly discovered evidence could be relevant is a defense that McCord's actions were justified by his belief that the actions were authorized by the Attorney-General of the United States or the Counsel to the President of the United States.[16]

Assuming *arguendo*, that a reasonable belief in authorization would be a defense to McCord's actions, we find that McCord may not raise this defense via *coram nobis* and we will not reach it on the basis of plain error. In regard to plain error, we find that the factual basis of McCord's claim is not established on the basis of the trial record[17] and therefore the trial judge was not in error in failing to raise the defense on his own motion.[18] And, as will be developed below, the newly discovered evidence relating to the defense is not sufficient to raise a reasonable doubt in either our minds or the minds of the jury about McCord's guilt. In regard to both the claim of plain error and the *coram nobis* petition, we note that a defense of belief in authorization, assumed for purposes of discussion, would in any event not be of constitutional magnitude[19] and therefore its

15. United States v. Lemonakis, 158 U.S.App. D.C. 162, 485 F.2d 941, 964 (1973). *See* Giglio v. United States. 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). *Cf.* Chapman v. California, 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

16. McCord does not allege that the fact of authorization is itself a defense, recognizing that United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) rules out any such contention. Rather, McCord's defense is one related to criminal responsibility: that he did not freely choose to do wrong, or to contravene community standards. Whether there was in fact an authorization for McCord's action is thus not directly relevant to this defense or to a reasonable belief in an authorization. Even if there were no authorization in McCord's case, he could claim "mistake of fact", if it were otherwise clear that a belief in authorization was a defense.

17. There is insufficient evidence in the trial record to support an instruction that a reasonable belief in authorization could be a defense to McCord's actions. *See* Belton v. United States, 127 U.S.App.D.C. 201, 382 F.2d 150, 155 (1967); Axelbank v. United States, 88 U.S.App.D.C. 147, 189 F.2d 18 (D.C.Cir. 1951); United States v. Kahn, 381 F.2d 824, 842 (7th Cir. 1967); United States v. Weiler, 458 F.2d 474, 475 (3d Cir. 1972). This certainly militates against any finding of "plain error." *See* United States v. Brettholz, 485 F.2d 483, 490 (2d Cir. 1973); Roper v. United

States, 403 F.2d 796, 798 (5th Cir. 1968); United States v. Richardson, 148 U.S.App. D.C. 109, 459 F.2d 1133 (1972). *See also* United States v. Bynum, 485 F.2d 490 (2d Cir. 1973); United States v. Marx, 485 F.2d 1179 (10th Cir. 1973); United States v. Murrah, 478 F.2d 762 (5th Cir. 1973); United States v. Grasso, 437 F.2d 317, 320 (3d Cir.), cert. denied, 403 U.S. 920, 91 S.Ct. 2236, 29 L.Ed.2d 698 (1971).

18. For this reason the cases of United States v. Thomas, 148 U.S.App.D.C. 148, 459 F.2d 1172 (1972) and United States v. Weiler, 458 F.2d 474, 476 (3d Cir. 1972) are distinguishable. In this connection, we also note that the factual predicate for McCord's defense is even now far from clear. His testimony before the Watergate Committee and the newly discovered evidence discussed in the text both tend to support the conclusion that McCord at no time believed his authorization was based on considerations of the domestic security of the United States, *see* Hearings on Watergate and Related Activities Before the Senate Select Comm. on Presidential Campaign Activities, 93d Cong., 1st Sess., pt. 1, at 127–28, 173–76, 203 (1973) [hereinafter cited as Watergate Hearings]; Trial Tr. at 1031. In light of this factual confusion and the problematic legality of McCord's defense, we find no plain error in the failure to raise the defense *sua sponte*. *Cf.* United States v. Richardson, 148 U.S.App. D.C. 109, 459 F.2d 1133 (1972).

19. *See* United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); Smith

nonassertion by itself does not seriously impair the judicial process or constitute an error automatically reviewable under principles of collateral relief.[20] Furthermore, McCord has presented us with no persuasive reasons why he did not assert this defense at trial such that his failure to so assert this defense should be excused. McCord is a well-trained, intelligent individual provided with competent counsel.[21] He was given a full and fair opportunity at trial to raise all his defenses. It is clear from McCord's own statements that he knew of the possibility of a defense of reasonable belief in authorization and of whatever facts there might be that would support such a claim.[22] Indeed, we would presume such knowledge from his allegation subscribed under oath that he did have a reasonable belief at the time of the break-in that his actions were authorized.

■■■ McCord's failure to raise the defense of authorization below is not excused by either the existence of newly discovered evidence or by the efforts of some government officials to coerce him to remain silent and plead guilty. Since the only relevant factual issue is whether McCord reasonably believed that he was acting pursuant to the authorization of the Attorney-General or Counsel to the President,[23] an issue which must be largely determined by reference to facts in McCord's possession at the time of his actions, newly discovered evidence could *a fortiori* have only a tangential relation to this central issue. The newly discovered evidence discussed above does provide much more evidence that McCord was reasonable in believing that his actions were authorized but no more evidence that he actually did believe that his actions were so authorized. This newly discovered evidence is, thus, merely cumulative to evidence that McCord possessed at the time of the burglary[24] and is not sufficient by itself to create in either our minds or the minds of the jury a reasonable doubt about McCord's guilt.[25] Our finding on this point also disposes of McCord's collateral contention that his failure to raise the defense below was excused by the prosecution's failure to disclose this newly discovered evidence at the time of the trial.

■■■ We furthermore find that the concerted pressures brought to bear on McCord do not justify his failure to even raise the defense of reasonable belief in authorization. McCord alleges that certain government officials offered him clemency and substantial cash payments to remain silent about the involvement of others in the authorization of the burglary or to plead guilty. McCord also alleges that his attorney took part in these efforts. Finally, McCord alleges that even if these pressures were not sufficient to prevent his own waiver, the pressures did affect the actions of co-

v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); Packer, Mens Rea and the Supreme Court, 1962 Sup.Ct.Rev. 107. There are, to be sure, some consitutional overtones to defenses based on criminal responsibility. *Cf.* Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1958); Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). However, none of these overtones are implicated in McCord's alleged defense. *See* United States v. Moore, 158 U.S.App.D.C. 375, 486 F.2d 1139, 1240 (1973) (Wright J. dissenting).

20. *Cf.* Kaufman v. United States, 394 U.S. 217, 83 S.Ct. 822, 9 L.Ed.2d 837 (1969); United States v. Tortorella, 480 F.2d 764, 771 (2d Cir. 1973); United States v. Baxter, 492 F.2d 150, 170 (9th Cir. 1973), cert. denied, 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974).

21. *Cf.* Nagell v. United States, 354 F.2d 441, 448–449 (5th Cir. 1966); Smith v. United States, 109 U.S.App.D.C. 28, 33, 283 F.2d 607, 612 (1960), cert. denied, 364 U.S. 938, 81 S.Ct. 387, 5 L.Ed.2d 369 (1961) (Bazelon, J. concurring).

22. *See* Watergate Hearings at 125–248.

23. *See* note 16 *supra*.

24. *Cf.* United States v. Baker, 139 U.S.App.D.C. 126, 130, 430 F.2d 499, 503, cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970); Smith v. United States, 109 U.S.App.D.C. 28, 283 F.2d 607 (1960), cert. denied, 364 U.S. 938, 81 S.Ct. 387, 5 L.Ed.2d 369 (1961); Thompson v. United States, 88 U.S.App.D.C. 235, 236, 188 F.2d 652, 653 (1951). *See also* Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956) (dictum).

25. United States v. Lemonakis, 158 U.S.App.D.C. 162, 485 F.2d 941, 964 (1973).

conspirators Hunt, Liddy and the Cuban-Americans, thus making it difficult for McCord to assert the defense of authorization in face of denials by the other co-conspirators. The short answer to these contentions is the following statement made by McCord, under oath and after receiving the advice of counsel, before the Senate Watergate Committee: "Well, I had many conversations with Mr. Alch [McCord's trial counsel] about the facts in the case, and the other principals involved and the decision of mine as to when to come forward with the information which I did was basically my decision and it was a day at a time decision on my part as to when was the proper issuance time to tell the facts on this case." [26] McCord did tell the facts of the case less than two months after the verdict in his trial in a letter to Judge Sirica and in May testified fully before the Senate Watergate Committee.[27] He did not plead guilty. There is uncontroverted evidence in the record that McCord never told his counsel that his actions were justified by his belief that those actions were authorized by the Attorney-General or Counsel to the President.[28] Furthermore, as is discussed in Part V below, there is insufficient evidence to even require a hearing as to whether McCord was denied the effective assistance of counsel. Finally, the fact that other defendants might perjure themselves is an insufficient justification for McCord's failure to *even raise the defense* when viewed in light of McCord's statements that the decision not to assert the defense was voluntary. If McCord had made any effort, however, slight, to raise this defense with his attorney or before the District Court, we might take a different view of the matter. Confronted with McCord's own lack of diligence [29] and his own statements that he was not coerced, we can only conclude that McCord knew full well the consequences of his failure to raise the defense and knowingly chose this course of action. We cannot excuse his failure to even raise the defense below and, therefore, no "exceptional circumstances" exist to justify this Court in considering the defense at this time.

McCord's claim relating to perjury at his trial by Magruder and Porter stands on a different ground. That claim incorporates two principles: first, there is the principle of actual prejudice by reason of the use of the perjured testimony and second, there is the principle of a fair and honest criminal process. The first principle is not applicable to McCord's case for the reasons discussed above. Even if Magruder and Porter had testified truthfully about their part in the authorization or their knowledge of the break-in, we still would not have a reasonable doubt about McCord's guilt.[30] The second principle is discussed in Part IV below and we postpone our discussion of that principle until that section of the opinion.

 We also find that McCord deliberately by-passed his remedies at trial and thereby waived his selective prosecution claim. The claim is that the government has arbitrarily chosen to prosecute only private citizens for violations of the anti-wiretapping laws while not prosecuting government agents who violate the same laws. Alternatively,

26. Watergate Hearings at 242. *See also id.* at 140–41, 232, 247.

27. *See* Sentencing Tr. (March 23, 1973), at 3–6; Watergate Hearings at 125–248.

28. Watergate Hearings at 296 (Statement of Gerald Alch). *See also id.* at 150, 247, 320–04.

29. *Cf.* United States v. Crane, 445 F.2d 509, 519 (5th Cir. 1971); Thompson v. United States, 88 U.S.App.D.C. 235, 188 F.2d 652 (1951).

30. *See* pp. 343–345 *supra.* Furthermore, as indicated in his letter to Judge Sirica, Sentencing Tr. (March 23, 1973), at 5, and in his testimony before the Senate Watergate Committee, Watergate Hearings at 198, 242; *see id.* at 127–29, 138–39, 144, 148, 157, 199, McCord indicated substantial knowledge of Magruder and Porter's perjury and in particular he admitted that he knew both had perjured themselves on the issue of their knowledge and authorization of the break-in. Thus, this evidence was neither newly discovered nor undisclosed to McCord. *Cf.* United States v. Baker, 139 U.S.App.D.C. 126, 130, 430 F.2d 499, 503, cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970).

McCord argues that he was in fact a government agent and that he is the first and only government agent to be prosecuted under the anti-wiretapping laws. McCord does not allege that he did not know of this defense at the time of his trial, yet he did not assert it. Since all the facts upon which this defense is based were known to McCord at trial, he cannot claim that newly discovered evidence has prompted him to raise the defense now. McCord, as was stated above, was given a full and fair opportunity at trial to raise all his defenses. The only real reason McCord offers for this failure to raise the defense below concerns the alleged disloyalty of his counsel. However, McCord has not alleged facts sufficient to even require a hearing into his allegations of disloyalty.[31] Finally, the applicability of the defense to the facts of this very extraordinary crime is doubtful, to say the least.[32] While we will not infer a deliberate by-pass or waiver of remedies at trial from a silent record, this record conclusively demonstrates that McCord knew of the defense and intelligently chose not to assert it. There is thus no plain error in the failure of the District Court to consider the matter on its own motion.

### III. Claims Relating to Judge Sirica's Conduct of the Trial

McCord seeks a new trial because, he claims, Judge Sirica exhibited a bias in favor of the prosecution and generally assumed an inquisitorial role in the conduct of the trial.[33] While McCord does not specify any particular incidents of bias or inquisitorial attitude,[34] a thorough search of the record reveals the following significant events at trial which arguably could fall within that description.[35] First, Judge Sirica agres-

31. See Part V infra.

32. See generally Washington v. United States, 130 U.S.App.D.C. 374, 401 F.2d 915 (1968); United States v. Berrigan, 482 F.2d 171 (3d Cir. 1973).

33. McCord made timely objections at trial to certain actions of the trial judge and made a more general motion directed to recusal. See Trial Tr. at 1680, 1897, 1995. The issue has thus been preserved for appeal. However, McCord did not comply with the requirements of 28 U.S.C. § 144 (1970) in his motion for recusal. We treat the motion as a motion for a new trial on the basis of Judge Sirica's conduct of the trial. See Billeci v. United States, 87 U.S.App.D.C. 274, 184 F.2d 394 (1950).

34. We have searched the trial transcript for incidents which might support McCord's claim. However, a reading of the transcripts cannot reveal intonations of the trial judge or gestures and actions which might indicate an opinion of guilt. For that we must rely on defense counsel to build a record or at least make some effort to do so. See Butler v. United States, 88 U.S.App.D.C. 140, 188 F.2d 24 (1951); Billeci v. United States, 87 U.S. App.D.C. 274, 184 F.2d 394 (1950). McCord has built no such record in this case.

35. We briefly discuss two specific claims of error relating to Judge Sirica's conduct of the trial. The first concerns Judge Sirica's conditioning of sentence on co-operation with the prosecution. This alleged impropriety in conditioning sentence on co-operation with the prosecution in no way affects the trial on the issue of guilt but at best serves only to vacate the sentence and to remand for re-sentencing. Furthermore, McCord himself was not given a temporary sentence and the allegedly coercive remarks by the District Judge were directed to the other defendants. Even assuming those remarks could potentially have vicariously "coerced" McCord, they clearly did not in this case since McCord began to cooperate with the prosecution before the allegedly coercive temporary sentences were entered. Sentencing Tr. (March 23, 1973) at 3–6; Sentencing Tr. (March 30, 1973) at 20–24.

Judge Sirica did not abuse his discretion in refusing to declare a mistrial after five of the original seven defendants pleaded guilty. McCord offers no evidence or reasons to support his allegation of prejudice and the overwhelming evidence of guilt trivializes any such prejudice. Furthermore, Judge Sirica gave a limiting instruction to the effect that the jury was not to draw any inference from the termination of the cases of the other defendants. See United States v. Johnson, 451 F.2d 1321, 1322 (4th Cir. 1971), cert. denied, 405 U.S. 1018, 92 S.Ct. 1298, 31 L.Ed.2d 480 (1972); United States v. Broadhead, 395 F.2d 761, 762 (2d Cir. 1968); United States v. Kahn, 381 F.2d 824, 837–838 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967). See also United States v. Jones, 425 F.2d 1048 (9th Cir. 1970), cert. denied, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1971); United States v. Restaino, 369 F.2d 544 (3d Cir. 1966); United States v.

sively examined Hugh Sloan, Treasurer of the Finance Committee to Re-Elect the President, outside the presence of the jury as to the amounts of money given to McCord's co-defendant, G. Gordon Liddy and, particularly, why part of it was laundered through Mexican banks. Second, Judge Sirica then read to the jury a transcript of his examination of Sloan which included a bench conference with McCord's attorneys. This examination reflected poorly on Sloan's credibility and indirectly called into question the testimony of Magruder and Porter.[36] Judge Sirica also interrupted the closing argument of Liddy's counsel to challenge the statement that "it is conceded" that witnesses Magruder, Sloan, Porter and Odle, another functionary in the Committee to Re-elect the President, are "on the safe side of innocence." Judge Sirica conducted outside the presence of the jury an extensive examination of Hunt and the Cuban-American defendants as to the reasons for their guilty pleas and

refused to accept a plea to anything less than all the charges. Finally, during sentencing Judge Sirica indicated that full co-operation with the prosecution might result in lighter sentences.

▮▮ A superficial review of these events might support the inference that at least Judge Sirica communicated an appearance of inquisitorial attitude inconsistent with notions of a fair trial.[37] However, such a view assumes an exceedingly narrow interpretation of the responsibilities of a trial judge. No judge should remain aloof while the prosecution ignores important evidence or, indeed, while the defense fails to explore testimony central to the issues at trial or fails to raise defenses which may exonerate the accused.[38] The judge, like the prosecutor in this respect,[39] is not a passive by-stander in the arena of justice, a spectator at a "sporting event;"[40] rather he or she has the most pressing affirmative responsibility to see that justice is done in every case.[41] There are,

Chamley, 376 F.2d 57 (7th Cir.), cert. denied, 389 U.S. 898, 88 S.Ct. 221, 19 L.Ed.2d 220 (1967).

**36.** The testimony of Sloan, Magruder and Porter had at best only a tangential relation to *McCord's* case and thus any prejudice to him was surely minimal.

**37.** *See* Cinderella Career & Finishing Schools v. FTC, 138 U.S.App.D.C. 152, 425 F.2d 583 (1970); Whitaker v. McLean, 73 App.D.C. 259, 118 F.2d 596 (1941); Bursten v. United States, 395 F.2d 976, 983 (5th Cir. 1968); United States v. Bukowski, 435 F.2d 1094, 1109 (7th Cir. 1971), cert. denied, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971); United States v. Tyminski, 418 F.2d 1060, 1062 (2d Cir. 1969), cert. denied, 397 U.S. 1075, 90 S.Ct. 1523, 25 L.Ed.2d 810 (1970); Note, Disqualification of Judges for Bias in the Federal Courts, 79 Harv.L.Rev. 1435 (1966).

**38.** *See* Carrado v. United States, 93 U.S.App. D.C. 183, 193, 210 F.2d 712, 722 (1953), cert. denied sub nom. Atkins v. United States, 347 U.S. 1018, 74 S.Ct. 874, 98 L.Ed. 1140 (1954); Patterson v. United States, 413 F.2d 1001, 1003 (5th Cir. 1969); United States v. Ramos, 413 F.2d 743, 746 (1st Cir. 1969); United States v. Spica, 413 F.2d 129, 132–133 (8th Cir. 1969); United States v. Ragsdale, 438 F.2d 21, 27 (5th Cir.), cert. denied, 403 U.S. 919, 91 S.Ct. 2231, 29 L.Ed.2d 696 (1971). *See also* United States v. Leonard & Sarvis,

161 U.S.App.D.C. 36, 494 F.2d 955, 976–977 (1974) (Bazelon, C. J. concurring in part, dissenting in part).

**39.** *See* Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642 (1971).

**40.** Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth?, 1963 Wash.U. L.Q. 279.

**41.** *See* A. Goldstein, Reflections on Two Models: Inquisitorial Themes in American Criminal Procedure, 26 Stan.L.Rev. 1009, 1022 (1974):

Despite the tendency to describe the American judge as passive or neutral, he is plainly more than a "mere umpire." Rules regarding the admissibility and sufficiency of evidence, the creation of presumptions, and instructions on law are, on their face, judicial controls designed to enforce the state interest in rational factfinding. They restrict control of the case by the parties and restrain the jury's impulses towards irrationality and nullification of law. Moreover, many American judges comment on the evidence, require that witnesses be summoned even when counsel do not call them, appoint experts, suggest defenses to counsel, use the doctrines of "plain error" and "effective assistance of counsel" to intrude upon counsel's control of the case,

to be sure, strict limits on the judge's power to intervene in the conduct of the trial, particularly in the examination of witnesses and the order of presentation of evidence.[42] These limits are premised on the primary role of counsel in the formulation of trial strategy [43] and on the rule that the judge should not communicate to the jury an opinion on the guilt or innocence of the accused.[44] When a trial judge intervenes in the conduct of a trial, we must determine whether the intervention is in pursuit of justice and whether that intervention is consistent with the premises of the limits on intervention.

■■■■ Judge Sirica's conduct of McCord's trial was consonant with these standards. Concerning the reading of Sloan's testimony, we have held in a companion case involving McCord's co-conspirator, Gordon Liddy, that the reading of Sloan's testimony and the examination that preceded it were a proper exercise of the judicial function. United States v. Liddy, 166 U.S.App.D.C. 95, at 104–109, 509 F.2d 428, at 437–442 (1974). The examination of the Cuban-Americans and Hunt as to their guilty pleas was undertaken outside the presence of the jury and thus could not have prejudiced the jury's deliberations on McCord's guilt. The statements made by Judge Sirica during sentencing, of course, could not have prejudiced the jury since it had been dismissed. Judge Sirica's interruption of Liddy's closing argument was justified since Liddy had stated a conclusion that nowhere appeared in the record; [45] Judge Sirica did not express an opinion on that conclusion but merely asked whether it had been conceded by the prosecution as Liddy had claimed. In sum, there was no prejudice to McCord by reason of Judge Sirica's conduct of the trial. McCord's contention that he deserves a new trial on that ground is without merit.

## IV. The Claim of Prosecutorial Misconduct.

■■■■ McCord next presses upon us the claim that his prosecution was so repugnant to civilized notions of criminal justice that considerations of fairness require either a dismissal of the indictment or a new trial.[46] The basis for this charge is his allegation that the "prosecution" [47] knowingly used perjured testi-

and apply "harmless error" to excuse counsel's inadequacies.

See generally United States v. Ammidown, 162 U.S.App.D.C. 28, 497 F.2d 615 (1974).

42. See United States v. Wyatt, 143 U.S.App. D.C. 136, 442 F.2d 858 (1971); United States v. Green, 139 U.S.App.D.C. 75, 429 F.2d 754 (1970); Young v. United States, 120 U.S.App. D.C. 312, 346 F.2d 793 (1965); Jackson v. United States, 117 U.S.App.D.C. 325, 329 F.2d 893 (1964); Blunt v. United States, 100 U.S. App.D.C. 266, 244 F.2d 355 (1957); Peckham v. United States, 93 U.S.App.D.C. 136, 210 F.2d 693 (1954); United States v. Hoker, 483 F.2d 359 (5th Cir. 1973).

43. See Young v. United States, 120 U.S.App. D.C. 312, 346 F.2d 793 (1965); United States v. Cruz, 455 F.2d 184, 185–186 (2nd Cir.), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); United States v. Henson, 159 U.S.App.D.C. 32, 486 F.2d 1292, 1304 n.13 (1973); Bursten v. United States, 395 F.2d 976, 983 (5th Cir. 1968); United States v. Porter, 441 F.2d 1204, 1213–1214 (8th Cir.), cert. denied, Harrison v. United States, 404 U.S. 911, 92 S.Ct. 238, 30 L.Ed.2d 184 (1971); United States v. Tyminski, 418 F.2d 1060,

1062 (2d Cir. 1969), cert. denied, 397 U.S. 1075, 90 S.Ct. 1523, 25 L.Ed.2d 810 (1970).

44. See cases cited notes 37, 38 & 42 supra.

45. See Johnson v. United States, 121 U.S.App. D.C. 19, 347 F.2d 803 (1965); United States v. Mieles, 481 F.2d 960 (2d Cir. 1973).

46. This claim was not raised below but because of its seriousness and its intimate relation to the integrity and reputation of judicial proceedings, we decide it on the merits. See Donnelly v. DeChristoforo, 416 U.S. 637, 646, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); notes 10 & 12 supra.

47. See note 14 supra. This claim stated in the text is not directed at the conduct of the attorneys who tried this case for the government. Because of our disposition of the case, we have no occasion to reach the issue of whether the definition of "prosecution" should be limited when conduct of the sort alleged herein is involved or when steps are taken to establish a legally independent prosecution force.

mony against him and engaged in a concerted effort to coerce him to plead guilty and to remain silent as to the involvement of high government officials in the authorization of the Watergate break-in.[48] Submerged in these allegations is the more general claim that the prosectuion intended to "cover-up" the involvement of high government officials by prosecuting only McCord and the other defendants and correspondingly not prosecuting persons in the government who allegedly approved the burglary in the first instance. McCord vaguely alleges that he has been prejudiced by these actions but we find no support for this implied allegation.[49]

McCord can point to no precedent other than the recent dismissal of the Ellsberg-Russo indictment on the basis of a burglary of the office of Mr. Ellsberg's psychiatrist by government agents.[50]

While that case is of limited precedential value in this Court, we have no doubt that McCord's most general assertion of principle is grounded in respectable authority: *i. e.* serious prosecutorial misconduct may so pollute a criminal prosecution as to require dismissal of the indictment or a new trial, without regard to prejudice to the accused. Few cases present the proposition in as bald a form as we have here; generally prosecutorial misconduct is reducible to certain specific errors which arguably may have prejudiced the defendant. Thus, courts have ordered new trials when the prosecution has knowingly used perjured testimony,[51] have reversed convictions when the atmosphere surrounding trial suggests intimidation or reckless disregard of the postulates of a fair trial,[52] have excluded evidence seized pursuant to unlawful searches partially because of lawless con-

---

**48.** McCord specifically alleges that Magruder and Porter committed perjury; that this perjury was known by the Counsel to the President, others in the White House and by persons in the FBI and the Justice Department; that he was offered executive clemency and money in return for his silence or his plea of guilty.

**49.** *See* Part II *supra.*

**50.** United States v. Russo, Crim.No. 9373 (C.D.Cal.1973). *See* United States v. Banks, 383 F.Supp. 389 (D.S.D.1974). *See also* P. Zimroth, Perversions of Justice 297–404 (1974).

**51.** Levin v. Clark, 133 U.S.App.D.C. 6, 8, 408 F.2d 1209, 1211 (1967) (Bazelon, C. J.):

"The rationale of these cases [concerning knowing use of perjured testimony] seems to have been that convictions must not be obtained through prosecutorial misconduct which violates civilized notions of fairness and thereby taints the entire criminal process. Lawless law enforcement should not be tolerated."

*See* Mesarosh v. United States, 352 U.S. 1, 14, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956); Mooney v. Holohan, 294 U.S. 103, 112–113, 55 S.Ct. 340, 79 L.Ed. 791 (1935); Levin v. Katzenbach, 124 U.S.App.D.C. 158, 165, 363 F.2d 287, 294 (1966) (Burger, J); Coggins v. O'Brien, 188 F.2d 130, 139 (1st Cir. 1951) (Magruder, C. J. concurring); Note, The Prosecutor's Constitutional Duty to Reveal Evidence to the Defend-

ant, 74 Yale L.J. 136, 138–40 (1964). *See also* United States v. Pearson, 448 F.2d 1207, 1217 (5th Cir. 1971) (prosecutorial misconduct in systematically excluding Negroes from juries by the exercise of pre-emptory challenges); cases cited and discussed Vess, Walking A Tightrope: A Survey of Limitations on the Prosecutor's Closing Argument, 64 J.Crim.L. & Criminol. 22 (1973); Alschuler, Courtroom Misconduct by Prosecutors and Trial Judges, 50 Texas L.Rev. 629 (1972).

**52.** *Cf.* Irvine v. California, 347 U.S. 128, 144–149, 74 S.Ct. 381, 98 L.Ed. 561 (1954) (Frankfurter, J. dissenting); Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936). As Justice Frankfurter stated in *Irvine*:

"This Court has rejected the notion that because a conviction is established on incontestable proof of guilt it may stand, no matter how the proof was secured. Observance of due process has to do not with questions of guilt or innocence but the mode by which guilt is ascertained. . . [W]hen a conviction is secured by methods which offend elementary standards of justice, the victim of such methods may invoke the protection of the Fourteenth Amendment because that Amendment guarantees him a trial fundamentally fair . . . . ."

duct represented by that search,[53] and finally have dismissed indictments where the defendant was entrapped by lawless conduct of police officers.[54] While the principle has found expression in these situations, we see nothing that limits it to such situations: "There is no body of precedents by which we are bound, and which confines us to logical deduction from established rules. Therefore we must consider the two objects of desire both of which we cannot have and make up our minds which to choose. It is desirable that criminals should be detected. . . . It is also desirable that the government should not itself foster and pay for the other crimes, when they are the means by which the [conviction] is to be obtained."[55]

■■■ This principle is not strictly limited to situations in which the defendant has suffered arguable prejudice by reason of the prosecutorial conduct. This is so because the principle is not one of fairness to the defendant alone but rather, in Justice Brandeis' words, is one designed to "maintain respect for law; . . . to promote confidence in the administration of justice; . . . to preserve the judicial process from contamination. . . . Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the

criminal law the end justifies the means—to declare that the government may commit crimes in order to secure the conviction of a private criminal— would bring terrible retribution."[56]

■■■ While this rationale for the principle excludes the strict requirement of proof of prejudice, it does not eliminate consideration of prejudice altogether. The facts of McCord's case offer a good illustration of why prejudice, actual or potential, is relevant to our determination. McCord, as developed in Part II, was not prejudiced in any way in this case by the actions of the government. To a large extent this is due to the fact that McCord was not merely the object of the governmental misconduct but was a participant in it.[57] The operative fact is that this conspiracy, of which McCord was a part, at least for part of the time, was not designed so much to convict private criminals as to prevent additional convictions.

■■■ This then is not a case of the end of law enforcement justifying the means, but of the end itself being, not law enforcement, but criminal activity. To remedy the government's breach of its duty "to observe the law scrupulously"[58] so that it may set a proper example for the citizenry we should not exonerate those in the government or associated with those in the government already convicted for that breach of duty but rather we should continue the process of prosecution. We may take judicial notice that this in fact being done.[59]

53. See authorities collected in United States v. Calandra, 414 U.S. 338, 356–366, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (Brennan J., dissenting); Olmstead v. United States, 277 U.S. 438, 469–485, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Holmes & Brandeis, JJ. dissenting).

54. See authorities collected in United States v. Russell, 411 U.S. 423, 436–450, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (Douglas, Marshall, Stewart & Brennan, JJ., dissenting).

55. Olmstead v. United States, 277 U.S. 438, 470, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928) (Holmes, J., dissenting).

56. Id. at 484–485, 48 S.Ct. at 574 (Brandeis, J., dissenting).

57. This is by his own admission in the Watergate Hearings at 130–40, 195–98, 242–43.

58. Olmstead v. United States, 277 U.S. 438, 485, 48 S.Ct. 564 (1928) (Brandeis, J., dissenting).

59. The one exception is Richard Nixon who was pardoned by President Ford, see Presidential Proc. 4311, 10 Week.Compil.Pres.Doc. 1103 (Sept. 8, 1974). As to this, no claim has been made to us that McCord's conviction is legally vulnerable because of the pardon, and any legal questions that may arise from the pardon are not sufficiently focused by the adversary process to justify appellate consideration of their validity or substantiality at this time. Apart from his pending challenge

In sum, we are not here faced with a choice between convicting criminals and decrying lawless government conduct— the two are one and the same in this case and we may achieve both goals by affirming McCord's conviction.

 Despite this persuasive argument, we might still be inclined to dismiss McCord's indictment in order to deter further attempts to select a few hapless individuals to bear the full brunt of criminal activity for which they were only partially responsible.[60] Although other branches of government have already begun the corrective processes which ultimately will purge the government of this past lawlessness, the fact remains that some officials in the government intended that McCord and the other defendants should bear full responsibility for actions which those officials authorized. Such attempts must be deterred by all means available. However, the deterrent effect of the dismissal of an indictment in such circumstances is negligible at best since that grants the offending government officials relief from the pressures which a conviction might impose upon the individuals chosen to bear the full criminal responsibility. The facts of McCord's case demonstrate the wisdom of this postulate since he chose, under threat of imprisonment, to break his silence about the involvement of others in the authorization of the burglary for which he was charged. McCord's claim of error on this ground must, therefore, be denied.

## V. The Claim of Ineffective Assistance of Counsel.

 McCord's final contention is that he was denied the effective assistance of counsel.[61] This claim of ineffective assistance is generically different from the usual claim made in this Court which generally consists of an indigent defendant, court-appointed counsel and an allegation of incompetence.[62] McCord's claim is that his retained,[63] admittedly competent counsel had more loyalty to the White House than to McCord himself and thus did not fully represent McCord's interests.

 As a preliminary matter, we have no quarrel with McCord's assertion that disloyalty or conflict of interest may, if substantial and proven, result in

to the pardon, see McCord v. Ford, Civil No. 74–1368 (D.D.C. filed Sept. 23, 1974), if appellant McCord has any constitutional claim it can be presented on collateral attack. We neither express nor intimate any opinion on whether any such claim may be non-frivolous. It would require an extension of existing case law on selective prosecution to novel circumstances. *See* Oyler v. Bowles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). *Compare* Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); United States v. Falk, 479 F.2d 616 (7th Cir. 1973); United States v. Berrios, 501 F.2d 1207 (2d Cir. 1974) *with* Ex parte Grossman, 267 U.S. 87, 120–121, 45 S.Ct. 332, 69 L.Ed. 527 (1925); State v. McIntire, 46 N.C. 1, 4, 8–9, 59 Am. Dec. 566 (1853); State v. Leak, 5 Ind. 359, 363 (1854); Stetler's Case, 22 Fed.Cas. p. 1315, No. 13,380 (C.C.E.D.Pa.1852); 2 Hawkins' Pleas of the Crown ch. 37, §§ 8–9, at 533–35 (8th ed. J. Curwood 1824). *See also* Ex parte Wells, 18 How. 307, 59 U.S. 307, 310, 15 L.Ed. 421 (1855) rendered obsolete in Gray v. United States, 104 U.S.App.D.C. 153, 260 F.2d 483 (1958); United States v. Wilson, 342 F.2d 43 (2d Cir. 1965); Rathbun v. Baumel, 196 Iowa 1233, 191 N.W. 297 (1922).

**60.** Cf. Dixon v. District of Columbia, 129 U.S. App.D.C. 341, 394 F.2d 966, 969 (1968). *See also* Yick Wo v. Hopkins, 118 U.S. 356, 68 S.Ct. 1064, 30 L.Ed. 220 (1886); United States v. Falk, 479 F.2d 616 (7th Cir. 1973) (en banc).

**61.** This point was also not raised below. We consider it as plain error because of its seriousness and its intimate relation to the reputation and integrity of judicial proceedings. *See* Dyer v. United States, 126 U.S.App.D.C. 312, 379 F.2d 89 (1967); *cf.* Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

**62.** *See, e. g.,* United States v. DeCoster, 159 U.S.App.D.C. 326, 487 F.2d 1197 (1973).

**63.** The fact that counsel is retained and may be dismissed is not determinative of claims of ineffective assistance of counsel. *See* West v. Louisiana, 478 F.2d 1026, 1032–1034 (5th Cir. 1973).

the denial of effective assistance of counsel in contravention of the Sixth Amendment.[64] We have little experience with such claims and thus have not developed any detailed standards to judge their merit. However, accepting even the broadest view of disloyalty or conflict of interest, we do not find that McCord has alleged facts sufficient to justify either a new trial or a hearing on his allegations.[65]

McCord alleges the following facts [66] in support of his contention. 1) His attorney on at least two occasions notified him that persons in the White House intended to offer him and other defendants clemency and financial support in return for his silence; [67] and his attorney later inquired of McCord whether he intended to accept the offer; 2) His attorney had conversations with John Mitchell, Paul O'Brien and William Bittman (attorney for E. Howard Hunt) and during those conversations McCord's lack of "cooperation" with the White House and his unwillingness to inform his attorney of his plans were discussed; and 3) His attorney unsuccessfully prevailed upon McCord to assert as a defense that the Watergate burglary was a CIA operation, a defense allegedly originating in the White House.

It is apparent that these allegations taken as true do not make a case for disloyalty or conflict of interest. At best they indicate only that McCord's attorney was consulting with the persons who arguably authorized the crime for which McCord was being tried and was allegedly involved in the same conspiracy that McCord himself was involved in,[68] hardly evidence of a conflict of interest. The desire to assert the CIA defense was certainly not indicative of a conflict of

---

**64.** In United States v. DeCoster, 159 U.S.App. D.C. 326, 487 F.2d 1197, 1203 (1973), we indicated that the ABA Project on Standards for Criminal Justice, Standards Relating to the Defense Function (App.Draft 1971) may be consulted to determine standards of effective assistance of counsel. Standards 1.6 and 3.5 clearly prohibit disloyalty and conflict of interest. *See also* ABA Code of Professional Responsibility, DR 4–101; DR 5–105; EC 7–9, 7–17; DR 7–101(A); H. Drinker, Legal Ethics 103–39 (1953). We have in the past held that joint representation of co-defendants may give rise to a conflict of interest that impairs the effective assistance of counsel, Lollar v. United States, 126 U.S.App.D.C. 200, 376 F.2d 243 (1967); Campbell v. United States, 122 U.S.App.D.C. 143, 352 F.2d 359 (1965). *See* Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We see no reason for limiting the principle of those decisions to situations in which an attorney formally represents co-defendants. *See also* Dukes v. Warden, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972); United States v. Bell, 165 U.S.App.D.C. 146, at 163–164, 506 F.2d 207, at 224–225 (D.C.Cir. 1974); Decker v. United States, 378 F.2d 245, 248–250 (6th Cir. 1967). The Sixth Circuit recently took such a broad view of conflict of interest in Ray v. Rose, 491 F.2d 285 (6th Cir.), cert. denied, 417 U.S. 936, 94 S.Ct. 2650, 41 L.Ed.2d 240 (1974). *Cf.* Wilson v. Phend, 417 F.2d 1197 (7th Cir. 1969).

**65.** We will not order a hearing on claims of ineffective assistance of counsel when the record on appeal conclusively shows that the appellant is entitled to no relief. *Cf.* Tucker v. United States, 138 U.S.App.D.C. 345, 347, 427 F.2d 615, 617 (1970). Any factual allegations which, if taken as true, establish a substantial violation of the right to effective assistance of counsel will require a hearing. *See* United States v. DeCoster, 159 U.S.App. D.C. 1197, 487 F.2d 1197 (1973). However, when claims of ineffective assistance of counsel arise at trial, the better practise is for the trial judge to immediately conduct an inquiry into the bases for the claim if it is at all colorable. *Id.* at 1200 n. 4.

**66.** These facts are controverted but we accept them as true for purposes of this appeal. We disregard McCord's conclusory statements that his attorney was a White House agent or "informer." *See* Decker v. United States, 378 F.2d 245, 250 (6th Cir. 1967).

**67.** McCord does not allege that his attorney made the offer or urged him to accept that offer. McCord does allege that his attorney advised him not to take the stand but he admits that his decision to remain silent about involvement of high government officials in the burglary was freely and intelligently made. *See* note 26 *supra*; Watergate Hearings at 242–243.

**68.** *See* note 57 *supra*.

interest and, in any event, McCord himself successfully ruled out that defense.[69] McCord's allegations thus reduce themselves to the claim that his attorney violated his confidences; however, in the facts of this case, that is not evidence of disloyalty.[70] Even standing alone, such a violation would not be a deprivation of Sixth Amendment rights since McCord himself knew of these violations at the time and there is no allegation as to what confidences were disclosed or whether the information disclosed was given to the U. S. Attorney's office.[71] It follows that the claim of ineffective assistance of counsel is without merit and McCord's conviction on eight counts of burglary, conspiracy and wiretapping must be

Affirmed.

MacKINNON, Circuit Judge (concurring specially):

I concur in the foregoing result. From an analysis of the record I conclude that the evidence of appellant's guilt on the offenses he was tried on was so strong and persuasive that none of his arguments, or the additional facts he refers to, would ever cause or justify a different verdict. Central to this result is my conclusion from all the evidence in the case that it is clear that appellant knew he was working for the Reelection Committee and not for the government. To my mind all his arguments come to naught when that fact is recognized.

While I approve the interrogation of witnesses by the court to test their veracity, and this is not a new position for me, I do not approve of the court reading to the jury the Sloan testimony taken out of the jury's presence. And to the extent that some of the testimony so read to the jury tended to show guilt of additional individuals on additional offenses, such conduct, to my mind, is also improper to the extent that such questioning or evidence disclosed or intimated the existence of other crimes not *nec-*

**69.** McCord also claims that his attorney should not have asserted the defense of "duress" which was asserted at trial. He argues that his attorney should have asserted the defense of authorization discussed in Part II above. However, these claims do not in any way impugn the loyalty of his attorney since it is just as probable that the cause of the failure to assert the defense of authorization was the attorney's reasonable belief that the defense had no merit, and that McCord did not himself believe that his actions were justified by an authorization. *See* note 28 *supra.* We, of course, will assume prejudice from lack of loyalty, unless the government proves otherwise, United States v. DeCoster, 487 F.2d at 1204, but McCord must first demonstrate that there has been a breach of loyalty in order for that presumption to be operative.

McCord by implication claims that the failure of his attorney to transmit all the details of a plea bargain offer is evidence of disloyalty, since that bargain would have required him to turn state's evidence in opposition to the wishes of those his attorney was allegedly serving. However, McCord, as we have noted in this opinion, had no intention of pleading guilty or breaking his silence until after the trial. This was made clear in his testimony in the Watergate Hearings at 232, 242–43. The fact that his attorney transmitted the gist of the offer—an offer of prosecutorial leniency in return for McCord's willingness to testify against others—negatives any implication

of disloyalty. The failure to inform McCord that the prosecution was specifically willing to drop all but one charge in return for his testimony may have been attributable to several factors other than disloyalty. In any event, standing alone, this scrap of evidence of disloyalty is insufficient to warrant a hearing.

**70.** McCord's attorney violated these confidences, if confidences they be, to individuals with whom McCord had himself spoken in regard to his plans for his defense and whether he would accept the alleged offer of clemency. Furthermore, McCord himself knew that these "confidences" were being violated at the time.

**71.** This case is thus wholly different from Hoffa v. United States, 385 U.S. 293, 304–307, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Caldwell v. United States, 92 U.S.App.D.C. 355, 205 F.2d 879 (1953); Coplon v. United States, 89 U.S.App.D.C. 103, 191 F.2d 749 (1951) and resembles more United States v. Zarzour, 432 F.2d 1, 3 (5th Cir. 1970), where the Court noted that the intrusion into the attorney-client relationship had not resulted in any information being passed to the prosecution. The fact that McCord knew of these violations of confidence suggest that the violations were voluntary both on his part and, of course, on his attorney's part. *Cf.* United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971).

*essary or appropriate* to prove the pending indictments. However, a close examination of the above errors does not indicate to my mind that they were sufficiently prejudicial to McCord, in view of his being caught red-handed in the offenses, to support a reversal of the judgment.[1] The court in its trial did not violate any of the substantial rights of the parties. It was not a perfect trial, but few trials are, and a perfect trial is not required.[2]

As for the statement in the majority opinion that officials of the government authorized some of this conduct, I fail to find where the facts in *this record* support that conclusion even though some of the individuals mentioned in this record had *previously* been government officials or employees. Certainly no acting government official authorized the unlawful entry into the headquarters at Watergate in his capacity *as* a government official.

Also, I am not as sure as Judge Bazelon's opinion asserts (*supra*, p. 351) that "past lawlessness" will be purged from the government. What he undoubtedly means is that some of those involved in these *most recent* offenses may be purged. The statute of limitations undoubtedly protects many others from retribution for prior misconduct of a similar nature.[3]

---

1. 28 U.S.C. § 2111 provides:

 On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties. (Added May 24, 1949, c. 139, § 110, 63 Stat. 105.)

2. In Lutwak v. United States, 344 U.S. 604, 619–620, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953), Justice Minton stated:

 A defendant is entitled to a fair trial but not a perfect one. This is a proper case for the application of Rule 52(a) of the Federal Rules of Criminal Procedure.

 That rule provides:

 (a) *Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

3. The 1972 presidential election was not the first to be plagued with political espionage. In an interview granted to James J. Kilpatrick, former President Nixon revealed that J. Edgar Hoover, the Director of the Federal Bureau of Investigation (FBI), had apprised him of certain bugging:

 He [President Nixon] recalled how much he had resented it when he learned that his own offices had been bugged in his 1962 gubernatorial campaign. He also remembered 1968 with equal resentment. "There was not only surveillance by the FBI, but bugging by the FBI, and (J. Edgar) Hoover told me that my plane in the last two weeks [of the 1968 presidential campaign] was bugged."

 Washington Star-News, May 16, 1974, § 1, at 1, col. 1. These bugging offenses were not investigated by Congress or prosecuted.